## BANEY and KURTZ *v.* KILLMER.

A vendor who had received notice of the vendee's election not to hold to the bargain, is not precluded, by a re-sale before the day at which he was to have conveyed, from maintaining an action for stipulated damages as an equivalent.

UPON error to the Common Pleas of Berks, the case was thus: Killmer, the defendant in error, brought an *action of debt* against the plaintiffs in error, on the following note or bill single, signed and sealed by them, to wit:—

"On the 1st day of April, 1842, we promise jointly and severally to pay unto Nicholas Killmer, or to his heirs or assigns, the sum of five hundred dollars, without defalcation for value received.   The condition thereof to be part payment of the purchase money, which we are to pay for the farm bought of said Killmer this day.   Should we, however, not comply with the conditions of the agreement of said purchase, dated this day, then the said sum shall be the assessed and liquidated sum of damages due said Killmer for our non-performance, and shall be collected as other debts of similar amounts.

"Witness our hands and seals this 14th day of October, 1841."

By the article of agreement referred to in this note, the plaintiff below had agreed to convey to the defendants below, a tract of land in Lebanon county, containing one hundred and twenty-five acres and fifty-nine perches, for $87 per acre, which the defendants below promised to pay on the 1st day of April, 1842, when they were to have their deed.

Prior to the 22d day of February, 1842, the defendants gave a written notice to the plaintiff as follows:—

"You are hereby notified, that the farm or plantation of land, situate in Lebanon township, Lebanon county, adjoining lands of George Eckert, Henry Shaffer and others, containing about one hundred and twenty-five acres and fifty-nine perches, which by our article of agree-

ment made, dated 14th day of October, 1841, has been sold to us, will not be taken, nor will the agreement be complied with; you will therefore be hereby notified, that I declare the agreement void, and throw the said farm upon your hands, and give notice to govern yourself accordingly.          (Signed,)     STOFFEL BENE,

"To Mr. Nicholas Killmer.          BENJAMIN KURTZ."

The plaintiff proved that this notice was served upon him before the 22d of February, 1842 ; that the names were signed by the scrivener who wrote the notice by order of Baney alone ; that afterwards, when it was shown to Kurtz, and he was asked whether or not he had signed it, he said he had not ; that upon being asked, whether he would take the land, he replied, he could not ; that he was then informed, that if he would not take it, plaintiff would sell the farm again, and that whatever it fell short of the price, they would have to make up, and that thereupon Kurtz said, you cannot recover more than the $500.

On the 22d day of February, 1842, the plaintiff sold the farm to Henry and Gabriel Deppen for $83 per acre, and stipulated to make a deed to them for the same, on the 2d day of April, 1842.

Plaintiff below did not tender a deed on the 1st of April, 1842, to defendants, nor did they ever tender the purchase money to plaintiff.

The cause being at issue, came on for trial before Banks, president, on the 17th day of October, 1844, who, at the close of the evidence, after referring to the facts, charged the jury as follows :—

" The agreement between the plaintiff and the defendants was entirely executory.   No money was paid, nor was possession delivered.   This note was given, as appears on its face and by its terms, as assessed and liquidated damages.   It is made so by the parties.   This parties may do for themselves, and thus withdraw the duty of ascertaining the amount of damages from the consideration of a court and jury altogether.   This, when fairly done, and is clearly so intended and agreed by the parties, is binding upon them.

" It appears by the evidence, if you believe it, that Baney wrote to the plaintiff, that he had abandoned the contract, and had this served by the constable of the township upon the plaintiff; and that Kurtz said, he had bought the land for Baney, and that he could not take it. When he was told that they would have to make up the loss upon a second sale, he made no objections to a second sale, but said the plaintiff could recover only the $500.  That Baney said if he was not ready to pay the money on the 1st of April, he would be ready to pay the $500.   In view of this state of facts, was it incumbent upon the plaintiff to tender a deed for the land?   Was he not relieved from

doing this by the conduct of Baney and Kurtz? These acts of theirs might disarm him, and induce him to make a second sale. If they did lead to that result, or had a direct tendency to lead to it, can they now complain that a deed was not tendered? When the plaintiff had been informed by both, that they would not take the land, to what good purpose would a deed have been tendered. If their conduct amounted to a determination on their part, not to take the land, and of this had given notice to the plaintiff, it would then be unnecessary for the plaintiff to tender them a deed. Nor was he bound to wait longer, and perhaps lose an opportunity of making an advantageous sale to another. If they had changed their minds, and had been willing to take the land and comply with the contract, they should have given timely notice of this change of purpose to the plaintiff. A man may waive the performance of any thing which is to be done for his benefit. He may abandon a contract, and when he does so, clearly and unequivocally, the other is not bound to do any thing in execution of it. He may, without more, resort to his action for the breach, as soon as the time for performance has elapsed.

"In this case the defendants may have preferred paying the $500 to taking the land, and paying the stipulated price for it. Of the propriety of this course they had the right to judge for themselves. If they thought proper to do so, the plaintiff, on being notified of their intention to do so, might take them at their word, and at the proper time demand the damages stipulated between them.

"If you believe that the second sale by the plaintiff was in consequence of what was said and done by Kurtz and Baney, it proves no defence for them in this action. If they wrote, said, or did nothing, which could lead the plaintiff to make this second sale, then it would be a good and ample defence for them.

"This action is not brought to compel a specific execution of the contract of sale. It is brought to recover the damages stipulated between the parties in case of a breach of the terms of their agreement. Has there been a breach of the contract by the defendants? If you believe that Kurtz and Baney informed the plaintiff that they would not take the land, then the plaintiff is entitled to recover this $500 claimed in this suit, although he did not tender them a deed for the land.                    JOHN BANKS, [Seal.]"

To this charge the defendant's counsel excepted. The jury returned a verdict in favour of the plaintiff for $576 41; and the defendants having removed the record to this court, assigned for error,

That the court erred in their charge to the jury, and especially in

telling them, "*if you believe that the second·sale by the plaintiff was in consequence of what was said and done by Kurtz and Baney, it proves no defence for them in this action;*" also in instructing the jury that it was unnecessary for the plaintiff to tender a deed to Kurtz and Baney, and that the plaintiff was entitled to recover although he again sold the land prior to the first of April, 1842.

*Smith* and *Pearson,* for the plaintiffs in error, argued, that the plaintiff below, by a resale of the land to Deppen prior to the 1st of April, 1842, had deprived himself of the·right to recover any thing under the contract of October, 1841 : That notwithstanding the notice by Kurtz and Baney of their refusal to take the land, the plaintiff, Killmer, was bound to continue in such a situation as would have enabled him to execute a deed to them on the 1st of April, 1842, according to the provision of the contract. That Kurtz and Baney might have revoked their notice, and, in that event, Killmer would have been obliged to convey to them ; and, having deprived himself of the power to do so, by the sale to Deppen, he could not recover in this case. That an action of debt for a penalty, which the parties had agreed to consider as liquidated damages, was not to be favoured, and differed essentially from covenant, where the actual damage only could be recovered. That under the circumstances of this case, the notice by Kurtz and Baney, and the resale of the land by Killmer to Deppen, amounted to a mutual rescinding of the agreement of October, 1841, and therefore no recovery could be had under it. They cited 1 Watts, 401 ; 1 H. Black. 270, 279.

*Davis,* for the defendant in error, argued, that in point of fact both defendants had refused to comply with their contract—Baney by written notice and Kurtz by parol; and to show that a contract for the sale of land may be abandoned by parol, cited Boyce *v.* McCullough, 3 Watts and Serg. 429. To show that it was not necessary for plaintiff to have tendered a deed on the 1st of April, 1842, after what was said and done by Kurtz and Baney, he cited Hampton *v.* Specknagle, 9 Serg. and Rawle, 221 ; Dixon *v.* Oliver, 5 Watts, 509 ; Colt *v.* Selden, Id. 525. After abandonment by defendants, the plaintiff might sell the land again, and defendants would be liable for the difference between the first and second sale in damages, even upon the article of agreement, without regard to the bill on which suit was brought, and, à fortiori, upon the bill itself, by which the damages are ascertained and stipulated by the parties. In support of this he cited Hurlburt *v.* Simpson, 3 Iredell's North Carolina Rep., 233 (1843); Girard *v.* Taggert, 5 Serg. and Rawle, 19, 27 ; Ketchimer et al. *v.*

Ebertson, 13 Johns. Rep. 359; Hatch v. Cobb, 4 Johns. Ch. Rep. 559; Ashcom v. Smith, 2 Penna. Rep. 219; Gaskill v. Morris, 7 Watts and Serg. 32; Huber v. Burke, 11 Serg. and Rawle, 246.

This suit was brought May 6, 1842, after the time had expired within which the defendants had bound themselves in the articles of agreement to pay the purchase money. At law, therefore, plaintiff was entitled to recover, and the defendants have not shown any defence legal or equitable. After this refusal to comply and notice, it was not necessary for plaintiff to wait until after the 1st of April, 1842, before he sold again. So far from this, as the agreement with Deppen of 22d February, 1842, shows that land had depreciated $4 per acre, it was the duty of Killmer to sell as soon as he could, and this is particularly insisted upon and held by his honour, the chief justice, in the case cited from 2 Penna. Rep., and in that case, as well as in the case cited from 13 Johns., it is said that the necessities of plaintiff might require an immediate sale. And why should plaintiff have waited? If defendants be not bound by bill in suit, neither would plaintiff be bound; and if plaintiff had waited until after 1st April, 1842, and property had depreciated $10 per acre instead of $4, it would have been a manifest loss to defendants. But both parties were bound by the bill, and if plaintiff had waited and tendered a deed and sued on articles, the defendant could have held him to the amount of stipulated damages, and he could have recovered no more.

The rescission of the contract, therefore, (if rescission it can be called,) must be regarded, from all that took place between the parties, as a rescission upon terms as understood and agreed to by defendant, that he was to pay $500 and no more; and this being so, the plaintiff having entered into a second agreement for the sale of the property, elected to consider it as his, and to sue for the stipulated damages. But it has been contended that the agreement with the Deppens was merely executory, and notwithstanding that agreement, if Kurtz and Baney had tendered the purchase money agreed to be paid by them on the 1st April, 1842, and a deed to be executed by Killmer, he could have conveyed to them a good title, because the agreement to sell to Kurtz and Baney was prior to that to sell to the Deppens. Besides, the 2d of April is the day fixed in the second agreement, and the evidence is clear that neither Kurtz nor Baney tendered the purchase money on the 1st April, 1842, nor at any time since.

The cases cited show a manifest difference between a suit for the purchase money, which is equivalent to a bill for specific performance, and an action for the penalty or stipulated damages, which is our case.

It was only necessary for us to show that defendants refused to

comply with their contract, this dispensed with a tender of a deed by the plaintiff.

The opinion of the court was delivered by GIBSON, C. J.

Was the notice given by the vendees, that they would not receive a conveyance, a proposal to rescind the contract from the beginning; and was the vendor's consequent resale of the land an acceptance of it? Were the plaintiff before the court in the attitude of a vendor seeking specific execution, his conduct would certainly bar him. As was said in Ley *v.* Huber, 3 Watts, 368, a chancellor is deaf to one who was not the owner at the time of the bargain: much less would he attempt to execute a contract which the complainant has rendered impracticable. But here the plaintiff stands on a legal title; and what is there in the case to impair it? It has been suggested that as the vendees were not bound to elect between an execution of the contract or payment of stipulated damages, before the day fixed for the conveyance, they were at liberty to revoke their election in the mean time; and that the vendor was consequently bound to retain the title, in order to be ready for the event. But was he bound to retain it while the market was falling? He was certain that the vendees would not make their election unless the market should take a turn; and to require him to be ready, at the hazard of losing without a chance of gaining, would be palpably unjust. Had the land risen in value, the vendees would doubtless have taken it at the stipulated price; but had it fallen, they would as certainly have rejected it. After they had deliberately given the bargain up, the vendor was bound by no duty, legal or moral, to bide their time. As no day was fixed for the declaration of their election, they might declare it at any time; and an election once made is irrevocable. (1 Rol. 726, l. 15.) But there was no proposal to rescind, and consequently no acceptance of one. What was the contract? The plaintiff agreed, by articles in the ordinary form, to sell his farm to the defendants, and convey the title at a particular day; while they, on the other hand, executed the sealed paper on which suit is brought, and by which they promised to pay him five hundred dollars at the day, as part of the purchase money, but with this peculiar qualification: "Should we, however, not comply with the condition of said purchase, then the said sum shall be the assessed and liquidated damages due said Killmer for our non-performance, and shall be collected as other debts of similar amount." When, therefore, they announced their determination to throw the farm on the vendor's hands, and gave him notice to govern himself accordingly, they did not propose to rescind, but expressed a determination to act

in a particular way on the basis of the contract itself. They had reserved a right to reject the land on payment of a specific sum; and it would be a strained construction to hold an election of the alternative to be an offer to undo the whole contract, and the vendors consequent resale of the land to be an acceptance of it. He had a right to understand the notice to be an act of election on the terms of the contract, which he had no power to resist; and all that remained was to do the best he could with the land, for his own interest.

. Judgment affirmed.