Pittsburgh Union Stock Yards Co., Appellant, *v.*
Pittsburgh Joint Stock Co.

Argued October 6, 1932.   Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Allen H. Kerr,* for appellant.—A submission whether by deed, parol or rule of court, like any other naked authority, is countermandable before execution of it, though expressed to be irrevocable: Power v. Power, 7 Watts 205; Erie v. Tracy, 2 Grant 20.

At common law either party may revoke a submission, even though contrary to his express agreement, at any time before award made: Bingham v. Guthrie, 19 Pa. 418; Paist v. Caldwell, 75 Pa. 161; Lewis's App., 91 Pa. 359; McKenna v. Lyle, 155 Pa. 599; McCune v. Lytle, 197 Pa. 404.

The ruling of the court below on the question of the submission, being a naked one, was erroneous.

The submission could be revoked at any time before award made or agreed upon: Zehner v. Lehigh C. & N. Co., 187 Pa. 487; Paist v. Caldwell, 75 Pa. 166; McKenna v. Lyle, 155 Pa. 599; Johnson v. Crawford, 212 Pa. 502; Buckwalter v. Russell, 119 Pa. 495.

*William S. Dalzell,* of *Dalzell, Dalzell, McFall & Pringle,* for appellee.—If the arbitrators were not named in the agreement it was executory only, and either party, in the event of a dispute, could ignore the agreement and bring suit (that is, up to that point the arbitration clause was a nudum pactum) ; but if the parties, upon occasion of a dispute, each named an arbitrator, the agreement became executed, and there was an implied

agreement that they should both be bound by the award: McManus v. M'Cullough, 6 Watts 357; Curran v. Phila., 264 Pa. 111; Bashford v. Land Co., 295 Pa. 560.

It seems equally clear that when an arbitration agreement is executed by the naming of arbitrators their award is res judicata, whether it be right or wrong, and can be attacked only for fraud: Wilson v. Getty, 57 Pa. 266; M'Manus v. McCullough, 6 Watts 357.

Furthermore, unless restricted by the agreement of arbitration, arbitrators are the final judges of both law and fact, and an award will not be reversed or set aside for mistake in either: Patriotic O. S. of A. Hall Assn. v. Ins. Co., 305 Pa. 107.

Where the agreement partakes of the nature of a contract, in which important rights are gained or lost, and the submission is one of the moving considerations, it can be revoked only by mutual consent: Bashford v. Land Co., 295 Pa. 560.

OPINION BY MR. JUSTICE SIMPSON, November 28, 1932:

By three successive leases, each executed by both plaintiff and defendant, the former became the latter's tenant of the stockyard property on Herr's Island in the Allegheny River. Each lease contained the following provision: "This lease may be modified or amended by the mutual consent of the parties hereto, and if any difference shall arise as to the rights or obligations of the parties under this lease, which cannot be adjusted amicably by the parties hereto, the same shall be submitted to a board of arbitrators composed of three competent disinterested men, one to be chosen by the lessor, one by the lessee and the third to be selected by the two arbitrators so chosen. The decision of the three arbitrators thus chosen, or that of a majority of them, shall be final and conclusive upon the parties hereto. In case either of the said parties hereto shall fail to appoint an arbitrator within thirty days after notice is given to that effect by the other party, then the arbitrator appointed by the

party not in default shall appoint an arbitrator for the defaulting party, and the said arbitrators so chosen shall select a third, and the three arbitrators so chosen shall decide the difference. Their decision, or that of a majority of them, shall be final and conclusive upon the parties hereto."

Towards the end of the tenancy, a "difference [did] arise as to the......obligations of the parties," whereupon plaintiff wrote defendant as follows: "You are notified that the Pittsburgh Union Stock Yards Company has chosen an arbitrator to adjust the difference that has arisen between said company and your company...... You are hereby called upon to choose a further arbitrator to adjust such difference and notified that if you do not choose such further arbitrator within thirty days after receipt of this letter, then the arbitrator so chosen by this company will appoint an arbitrator for you, all as provided in the leases referred to in said resolution." In compliance with that demand, defendant also chose its arbitrator, and a "third [was duly] selected by the two arbitrators so chosen."

The three arbitrators fixed a time and place of meeting; they and both parties attended, all the relevant facts were agreed to, each party submitted a brief on the questions involved and a representative of plaintiff also presented its contentions orally. The three arbitrators then went into consultation and discussed the matters in dispute, but, before a "formal award" was made, the arbitrator selected by plaintiff withdrew, without giving any reason for so doing, and did not again meet with the others. Later, plaintiff undertook to revoke the appointment of its arbitrator and the submission of the disputes to arbitration. To this defendant objected, and the two remaining arbitrators, after due notice to their colleague, proceeded to complete the performance of their duties, as they had the right to. do (Dickerson v. Rorke, 30 Pa. 390), and made an award in favor of defendant.

Subsequently, plaintiff brought the present suit; defendant filed an affidavit of defense and counterclaim, to which latter plaintiff made a reply. Upon these pleadings, the court below gave judgment for defendant in the amount fixed by the arbitrators, and plaintiff then took the present appeal. No dispute of fact was raised either below or here, the parties agreeing that the only question to be determined is whether or not the arbitral award was valid under the facts above stated.

It is not our purpose to delve into the numerous decisions in this class of cases, since most of them, so far as future litigation is concerned, have been relegated to the legal scrap heap by the Act of April 25, 1927, P. L. 381; which does not apply to the present case, however, because the leases here involved were "made prior to the taking effect of this act:" section 19, P. L. 387.

We shall assume, for present purposes that, when the dispute arose, plaintiff could not have been forced into the arbitration provided for, because the arbitrators were not named in the leases; but no one tried to force it into arbitration; all the forcing was done by plaintiff itself. Assuming that, when the controversy arose, plaintiff had the right either to have it determined by the usual legal tribunals or to proceed (subject to defendant's possible right to object) under the arbitration provision, this was the extent of its right. It could not demand and have arbitration accorded to it, and then, after the arbitrators had considered all the matters referred to them, and were, as plaintiff feared, about to decide against it, revoke that which it had invoked, and have another chance before another tribunal to whom it chose not to submit the controversy at the time it had the opportunity so to do. So far as we are aware, no case exists, certainly none in this State, where such an inequitable course as that attempted to be pursued by plaintiff here, has ever been sustained, and we are far from desirous of establishing it now.

When defendant acceded to plaintiff's demand to have the controversy decided by arbitration, and went, because of that demand, to the expense and trouble involved in the arbitration up to the time plaintiff sought to withdraw, including a portion of the compensation and cost of the arbitrators, plaintiff had no option but to proceed in accordance with the election it had made. It is said in 20 C. J. 14: "A remedy based on the theory of the affirmance of a contract or other transaction is inconsistent with a remedy arising out of the same facts and based on the theory of its disaffirmance or rescission, so that the election of either is an abandonment of the other." And again, page 20: "Thus, where the remedies are so inconsistent that the pursuit of one necessarily involves or implies the negation of the other, the party who deliberately and with full knowledge of the facts invokes one of such remedies is said to have made his election, and cannot thereafter have the benefit of the other." Our own cases are to the same effect. In Pott's App., 5 Pa. 500, 503, we said: "But precedent has established the wholesome principle that distinct remedies cannot be used concurrently or alternately, unless they are consistent, not only in purpose but in kind." In Fire Assn. v. Rosenthal, 108 Pa. 474, 478: "It is also a well settled rule of law, that when an election is open between alternative conditions of a contract, the alternative chosen must be adhered to; an election once made is irrevocable." To the same effect is Baney v. Killmer, 1 Pa. 30, 35. It is, indeed, but an application of the unbending rule that a litigant will not be permitted, against objection, to both affirm and deny, either at one and the same time, or successively, on the same subject-matter.

It is not possible to read the record in this case without reaching the conclusion that the arbitrator appointed by plaintiff withdrew from the arbitration because he found the majority were going to decide the case against his appointor; and that the latter at-

tempted to revoke the agreement to arbitrate because he told it of this fact. The record is silent in regard to these matters, however, and it is not necessary to utilize that belief in order to sustain the judgment below. What we have already said is conclusive; however, it is quite in point, and also determinative, to quote from Werneberg v. Pbg., 210 Pa. 267, 275-276: "Here the dispute had not only been referred to director Wilson, but the parties had submitted to him all their proofs, and he had fully heard them, and the only other act to be performed by him, in the discharge of his duties as arbitrator, was to announce his decision. In the language of Chief Justice AGNEW in Paist v. Caldwell, 75 Pa. 161: 'Under such circumstances, it was not in the power of the defendant at the last moment, and after the referees had gone far into the case, suddenly to give a notice of revocation and avert a result.'"

The judgment of the court below is affirmed.