KEYSTONE TECHNOLOGY GROUP,
INC., Appellant,

v.

KERR GROUP, INC., formerly Kerr
Glass Manufacturing, Inc.,
Appellee.

Superior Court of Pennsylvania.

Submitted Aug. 19, 2002.
Filed May 16, 2003.

Robert P. Meingossner, Norristown, for appellant.

Matthew H. Haverstick, Lancaster, for appellee.

BEFORE: LALLY–GREEN, TODD, and CAVANAUGH, JJ.

OPINION BY TODD, J.:

¶1 Keystone Technology Group, Inc. ("Keystone") appeals the January 9, 2002 Order of the Court of Common Pleas of Lancaster County denying its motion to compel arbitration.[1] Upon review, we vacate the order and remand for further proceedings consistent with this opinion.

¶2 The facts and procedural history of this action, as set forth in this Court's prior memorandum, are as follows:

> This matter arises out of a dispute between the parties involving an agreement for the sale of land. In October of 2000, the parties entered into an agreement whereby Appellant agreed to purchase commercial real estate situated at 500 New Holland Avenue, Lancaster, Pennsylvania from Appellee, Kerr Group, Incorporated [ ("Kerr") ], for [$2,740,000]. Due to various problems, the sale was never completed, and Appellant filed a complaint in equity and lis pendens on March 22, 2001. The complaint requested specific performance of the sales agreement, and an injunction prohibiting Kerr from selling or otherwise encumbering the land. On May 3, 2001, Appellant filed a motion to compel

---

1. Keystone initially purported to appeal both the January 9, 2002 Order and an earlier order dated November 30, 2001 which was docketed on December 3, 2001. This Court held that the appeal was untimely as to the earlier order. *Keystone Tech. Group, Inc. v. Kerr Group, Inc.*, No. 104 MDA 2002, 817 A.2d 1190 (Pa.Super. filed Dec. 13, 2002). Accordingly, we quashed that portion of the appeal and remanded this matter to the trial court for preparation of an opinion. *Id.* That opinion now has been submitted to this Court and this matter is ripe for resolution. Additionally, we note that this appeal is an interlocutory appeal as of right from the denial of a petition to compel common law arbitration. Pa.R.A.P. 311(a)(8); 42 Pa.C.S.A. §§ 7320(a)(1), 7342(a). *See also Midomo Co. v. Presbyterian Housing Dev. Co.*, 739 A.2d 180, 183 (Pa.Super.1999).

arbitration. The motion was granted that same day, but the order was later vacated. In response to Kerr's preliminary objections, Appellant filed an amended complaint on May 11, 2001. Appellant's second motion to compel arbitration was filed on May 16, 2001. On May 23, 2001, Kerr filed an answer and new matter and counter-claim to Appellant's amended complaint. On July 2, 2001, Appellant filed a motion seeking a protective order from discovery requests filed by Kerr, as well as a stay of proceedings pending disposition of the motion to compel arbitration. Appellant also requested that the Trial Court order the parties to arbitration. On July 13, 2001, the Trial Court granted Appellant's motion for a protective order "pending resolution of the petition to compel arbitration." Another Trial Court order was entered on December 3, 2001 which, among other things, denied Appellant's motion for stay of civil proceedings pending arbitration, which had been part of Appellant's request for a protective order. On January 10, 2002, the Trial Court supplemented its order of December 3, 2001 with an additional order which provided that all of Appellant's motions to compel arbitration were denied, and that its entire motion for protective order was also denied.

*Keystone Tech. Group, Inc. v. Kerr Group, Inc.*, No. 104 MDA 2002, slip op. at 1–2, 817 A.2d 1190 (Pa.Super. filed Dec. 13, 2002) (citations omitted).

¶ 3 On appeal, Keystone asks this Court to consider:

A. Is there an enforceable arbitration agreement between the parties?

B. If a valid arbitration agreement exists between the parties, must the controversy between them be submitted to arbitration, where the judicial forum is not used as a substitute for arbitration, but in furtherance of the arbitration?

(Appellant's Brief at 2.)

■ ¶ 4 Prior to reaching the merits, however, we must determine whether Keystone has waived any right to compel arbitration. The trial court held that "[b]y filing its equity complaint for specific performance Keystone made an election as to the remedy it sought" and, therefore, "Keystone waived its right to seek arbitration after it had filed its lawsuit."[2] (Trial Court Opinion, 1/24/03, at 1–2.)

---

2. In support of its decision on this point, the trial court relied on *Pittsburgh Union Stock Yards Co. v. Pittsburgh Joint Stock Yards Co.*, 309 Pa. 314, 163 A. 668 (1932). Upon review, however, we find that the facts of that case are distinguishable from those of the present case and that its legal analysis indeed is consistent with this Court's subsequent jurisprudence, as set forth below.

In *Pittsburgh Union*, the plaintiff, who had submitted a dispute for arbitration under a lease agreement, pulled its selected arbitrator before the panel issued its decision. The defendant objected to plaintiff's removal of its selected arbitrator and the remaining two arbitrators issued a judgment for the plaintiff. Subsequently, the plaintiff commenced litigation and the trial court granted judgment on the pleadings for the defendant in the amount of the arbitrator's award. The only issue on appeal was the validity of the arbitrator's award, which our Supreme Court upheld. *Id.*

The Court noted that when the plaintiff filed suit, the defendant already had gone to the "expense and trouble involved in the arbitration," *id.* at 319, 163 A. at 670, and the arbitrator's work essentially had been done except for the rendering of a decision, which the plaintiff correctly predicted was going to be adverse to its interests. In reaching its conclusion, the Court stated that:

Assuming that, when the controversy arose, plaintiff had the right either to have it determined by the usual legal tribunals or to proceed (subject to defendant's possible right to object) under the arbitration provision, this was the extent of its right. It could not demand and have arbitration accorded to it, then, after the arbitrators had considered all the matters referred to them, and were, as plaintiff feared, about to de-

¶ 5 It is well-settled that although "[a]s a matter of public policy, our courts favor the settlement of disputes by arbitration, . . . the right to enforce an arbitration clause can be waived." *Goral v. Fox Ridge, Inc.*, 453 Pa.Super. 316, 321, 683 A.2d 931, 933 (1996). Moreover, "waiver of the right to proceed to arbitration may be expressly stated, or it may be inferred from 'a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary.'" *Id.* (quoting *Samuel J. Marranca Gen. Contracting Co., Inc. v. Amerimar Cherry Hill Assocs. Ltd. P'ship*, 416 Pa.Super. 45, 610 A.2d 499 (1992)). Finally, "a waiver of a right to proceed to arbitration pursuant to the term of a contract providing for binding arbitration should not be lightly inferred and unless one's conduct has gained him an undue advantage or resulted in prejudice to another he should not be held to have relinquished the right." *Kwalick v. Bosacco*, 329 Pa.Super. 235, 238, 478 A.2d 50, 52 (1984).

¶ 6 Generally it is the defendant who seeks to invoke and enforce an arbitration provision in a contract after having been hailed to the civil courts by the plaintiff. The present case is atypical, therefore, as Keystone is both the plaintiff in action seeking specific performance of the contract at issue and the party that now seeks to compel arbitration thereunder. In *Kwalick*, however, this Court held that:

> the mere filing of a complaint or an answer without resulting prejudice to the objecting party will not justify a finding of waiver of the right to arbitration. Thus, merely because plaintiff filed his Complaint in Assumpsit[,] he is not automatically deemed to have waived his rights to proceed to binding arbitration as set forth in [the] contract.

*Id.* (citations omitted).

¶ 7 When the plaintiff's request to arbitrate was filed in *Kwalick*, the pleadings consisted only of the complaint and the answer, which also raised new matter and asserted a counterclaim. Moreover, while this Court's opinion does not indicate how long the action had been pending, it does state that the request to arbitrate was filed on June 14, 1977, more than 11 weeks after the defendant filed his answer on March 28 of that year. In addition, this Court noted that the depositions, which ultimately took place in furtherance of the litigation, had not yet occurred. Thus, this Court concluded that the defendant had not shown any prejudice to him or undue advantage gained by the plaintiff and, therefore, affirmed the trial court's denial of the defendant's request for a declaratory judgment and its order that the parties' dispute be resolved by arbitration.[3] *Id.*

---

cide against it, revoke that which it had invoked, and have another chance, before another tribunal to whom it chose not to submit the controversy at the time it had the opportunity to do so.

*Id.* at 318, 163 A. at 669.

In the present case, had Keystone substantially advanced the litigation, we would affirm under the reasoning of *Pittsburgh Union* and the cases cited *infra*. As discussed below, however, this litigation had barely commenced when Keystone sought to compel arbitration.

3. We note that neither the parties, nor the trial court, cited to *Kwalick*. We recognize that *Kwalick* was an assumpsit action based on a contract for personal services as a professional football player, while the present action sounds in equity as Keystone seeks specific performance of the agreement at issue and a preliminary injunction. We believe, however, that the rationale set forth in *Kwalick* applies regardless of whether the action is at law or in equity and, thus, that *Kwalick* governs our disposition of the present matter.

■ ¶ 8 In the present case, Keystone filed its complaint on March 22, 2001. Between that date and May 3, 2001, the date Keystone presented its motion to compel arbitration,[4] the only activity reflected on the docket is the sheriff's proof of service of the complaint on April 10, 2001 and Kerr's preliminary objections to the complaint filed April 30, 2001. Moreover, there is no indication in the briefs to this Court or in the certified record that any discovery took place during this six-week period. Finally, Kerr does not argue that it suffered any prejudice or that Keystone gained any unfair advantage.[5] Given these facts, we hold under *Kwalick* that Keystone did not waive its right to arbitrate simply by initiating litigation.

■ ¶ 9 Our inquiry does not end here, however, because the trial court expressed an alternate basis for its decision, holding that "Keystone's request for arbitration must fail for another reason—the contingencies under the sales agreement as to government and private financing and approval by Kerr's board of directors have not been fulfilled. Consequently, the arbitration clause in the sales agreement is void and arbitration cannot be compelled." (Trial Court Opinion, 1/24/03, at 2.)

■ ¶ 10 In reviewing the denial of a petition to compel arbitration, our review "is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the peti-

tion." *Midomo Co., Inc. v. Presbyterian Hous. Dev. Co.*, 739 A.2d 180, 186 (Pa.Super.1999) (citation omitted). It is well-settled that:

> Where a party to a civil action seeks to compel arbitration of that action, a two-part test is employed to determine if arbitration is required. First, the trial court must determine a valid agreement to arbitrate exists between the parties. Second, if the trial court determines that such an agreement does exist, it must then determine if the dispute involved is within the scope of the arbitration provision. "The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally."

*Pittsburgh Logistics Sys., Inc. v. Professional Trans. and Logistics, Inc.*, 803 A.2d 776, 779 (Pa.Super.2002) (citations omitted). These are questions of law and our review is plenary. *Highmark Inc. v. Hospital Serv. Ass'n of Northeastern Pa.*, 785 A.2d 93, 98 (Pa.Super.2001), *appeal denied*, 568 Pa. 720, 797 A.2d 914 (2002).

■ ¶ 11 Presently, the trial judge determined that because certain explicit conditions precedent to the enforceability of the contract had not occurred, the contract, and therefore the arbitration provision contained therein, never had legal effect. It is well settled that if a contract contains a condition precedent, the condition precedent must occur before a duty to perform under the contract arises. *Acme*

---

4. The certificate of service appended to the motion to compel arbitration states that it was served on April 30, 2001 and Kerr, in its brief in support of its preliminary objections, states that Keystone's motion was filed on that date as well. The certified record, however, does not indicate the date when the motion was filed, only that it was presented to the trial court on May 3, 2001.

5. We note that Kerr argues that Keystone's choice of a judicial forum foreclosed its right

to compel arbitration, not that Keystone waived its right to seek arbitration due to unreasonable delay in making its arbitration demand while the litigation progressed. The question of whether a party's demand for arbitration is timely is for the arbitrators, not the courts. *Highmark Inc. v. Hosp. Serv. Ass'n. of Northeastern Pa.*, 785 A.2d 93, 100–01 (Pa.Super.2001), *appeal denied*, 568 Pa. 720, 797 A.2d 914 (2002).

*Markets, Inc. v. Federal Armored Express, Inc.*, 437 Pa.Super. 41, 46, 648 A.2d 1218, 1220 (1994). This Court further has held that if a contract never had legal effect due to the failure of a contingency, an arbitration provision contained therein is not enforceable. *Midomo Co.*, 739 A.2d at 189.

¶ 12 In the present case, the trial court did not conduct an evidentiary hearing regarding the satisfaction of the conditions precedent. Moreover, the certified record contains only the pleadings and the attachments thereto,[6] and is devoid of any evidence regarding the satisfaction of the conditions precedent. We lack, therefore, the requisite "substantial evidence" necessary to sustain the trial court's finding that the conditions precedent had not been met. We similarly lack, however, substantial evidence that conditions precedent in fact had been satisfied. Accordingly, we are constrained to vacate the trial court's order and remand this matter for an evidentiary hearing to determine whether the conditions precedent were, or were not, satisfied.

¶ 13 Order **VACATED**. Case **REMANDED** for further proceedings consistent with this memorandum. Jurisdiction **RELINQUISHED**.

¶ 14 CAVANAUGH, J., files a Dissenting Opinion.

DISSENTING OPINION BY CAVANAUGH, J.:

¶ 1 I am in agreement with the well-reasoned majority opinion, but disagree with its final conclusion. I would not remand for an evidentiary hearing on the subject of conditions precedent (with no

further direction to the trial court as to resolution of the issue on appeal). Instead, I would find that the court correctly decided that conditions precedent were not met based on the record before it, and would therefore affirm the order which denied the motion to compel arbitration.

---

6. Kerr appends to its reproduced record excerpts from the transcripts of several depositions. These documents, however, are not contained in the certified record. It is axiomatic that an appellate court is limited to considering only those facts which have been duly certified in the record on appeal and, for purposes of appellate review, what is not of record does not exist. *Spink v. Spink*, 422 Pa.Super. 126, 133 n. 1, 619 A.2d 277, 280 n. 1 (1992).