J-S40031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DEMPSEY UNIFORM & LINEN SUPPLY, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FOX TWO D/B/A CAMELOT RESTAURANT | |
| Appellant | No. 2203 MDA 2013 |

Appeal from the Judgment Entered November 1, 2013
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 12 CV 5629

BEFORE:  BENDER, P.J.E., BOWES, J., and PANELLA, J.

MEMORANDUM BY PANELLA, J.:              **FILED SEPTEMBER 24, 2014**

Appellant, Fox Two d/b/a Camelot Restaurant ("Camelot"), appeals from the judgment entered in the Court of Common Pleas of Lackawanna County in favor of Appellee, Dempsey Uniform & Linen Supply, Inc.  At issue in this appeal is a prior order in this case that concluded that this contract dispute was governed by a written agreement that contained a mandatory arbitration clause.  After careful review, we affirm.

On September 19, 2012, Dempsey filed a complaint alleging that Camelot had breached a service contract with Dempsey.  After Camelot filed an answer with new matter, Dempsey filed a motion to compel arbitration. The following factual summary is taken from testimony presented at the June 5, 2013, hearing on Dempsey's motion to compel arbitration.

On May 26, 2010, Dr. Joseph Soliman, the principal owner of Camelot, was preparing the restaurant for a grand opening. Also present was the owner of another area restaurant, William Barrasse, who was acting as a consultant to Dr. Soliman. Two representatives of Dempsey, Jim Rhodes and Mark Lewis, came to Camelot to discuss whether Camelot would utilize Dempsey's linen rental services.

Barrasse utilized Dempsey's service at his own restaurant, and was well known to Dempsey's agents. After a discussion, Barrasse signed a form titled "Service Agreement," and wrote that his title was "Consultant." Barrasse testified that he did not sign the form in his own capacity, or for the benefit of his own restaurant. He further testified that he signed the form "in order for Dempsey to proceed with giving the doctor a price structure. They wouldn't give him any prices or anything unless he signed this." N.T., 6/5/13, at 54.

The first paragraph of the form stated "[Dempsey] agrees to supply and the undersigned customer … agrees to accept exclusively from Dempsey the type of merchandise and services listed below and added during the term in accordance with the prices and conditions set forth in this agreement." Service Agreement, 5/26/10, at ¶ A. The second paragraph provided that the agreement was effective as of the date of execution and had a term of 260 weeks from the date service began, with each party retaining a right of termination with 90 days' notice. **See id**., at ¶ B.

Furthermore, the agreement stated that "both parties hereby agree to resolve any controversy or claim arising out of this Agreement by Arbitration either in Lackawanna County, PA or Northumberland County, PA ...." *Id*., at ¶ 11.

Mark Lewis testified that in conjunction with the service agreement, Dr. Solimon executed a credit application as president of Camelot. *See* N.T., 6/5/13, at 18-19. Dr. Solimon agreed that he had executed a credit application, but stated that he had been told that this was all necessary only for a trial run of Dempsey's services. *See id*., at 58-60. Approximately one month later, Dempsey's general manager executed the contract on behalf of Dempsey. Lewis testified that Dempsey serviced Camelot for almost two years pursuant to the agreement, and Camelot paid Dempsey during the same period. *See id*., at 21; 25. On June 6, 2012, Camelot stated that it was no longer doing business with Dempsey, and procured the services of another linen rental company.

After receiving this evidence, the trial court concluded that the service agreement was a binding written agreement, and ordered that the case proceed through arbitration. The arbitrator found in favor of Dempsey, and judgment was entered on behalf of Dempsey. This timely appeal followed.

On appeal, Camelot raises the following issues for our review:

[1.] Whether the trial court abused its discretion when it held that a written contract existed between Fox Two d/b/a Camelot Restaurant ("Camelot") and Dempsey Uniform and Linen, Inc. ("Dempsey")?

[2.] Whether the trial court erred and abused its discretion when it denied Camelot's request for an offer of proof, and then refused to allow testimony as to whether or not the parties agreed to the terms set forth in a writing, which the trial court ultimately held bound the parties to arbitrate their dispute?

[3.] Whether the trial court's denial of Camelot's request for an offer of proof or permission to elicit certain testimony constituted a deprivation of Camelot's rights pursuant to 42 Pa.C.S. § 5104 and § 5105?

Appellant's Brief, at 4.

On appeal, Camelot requests that this Court reverse the trial court's order compelling arbitration, and remand this case for further proceedings in the trial court. *See id*., at 11. We review a trial court's decision to compel arbitration under an abuse of discretion standard. *See Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 654 (Pa. Super. 2013).[1] To determine if arbitration is required, the trial court must employ a two-part test. First, the trial court must determine if a valid agreement to arbitrate exists between the parties. *See Pittsburgh Logistics Systems, Inc. v. Professional Transportation and Logistics, Inc.*, 803 A.2d 776, 779 (Pa. Super. 2002). If so, the trial court must then determine if the dispute

_____

[1] We note an apparent conflict in our case-law regarding this standard of review. Some of our precedent indicates an abuse of discretion standard, while other precedent indicates that the review is pursuant to a plenary, *de novo* standard. Interestingly, some precedent, such as *Pisano* and *Keystone Technology Group, Inc. v. Kerr Group, Inc.*, 824 A.2d 1223 (Pa. Super. 2003), assert both standards of review within the same opinion. In the present matter, we will proceed under the abuse of discretion standard, but note that the result would be the same if we were to review the issue under a *de novo*, plenary standard.

before it falls within the scope of the arbitration agreement. *See id.* Our standard for determining the scope of an arbitration provision is the same rule that governs the construction of contracts. *See id.* Specifically, we must determine the scope to which *the parties* intended: "The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally." *Id*. (quotation omitted).

Camelot's arguments on appeal all focus on the first step of the above test. Camelot contends that there was no "meeting of the minds" sufficient to form a contract that bound the parties to the terms contained in the written agreement. As a corollary to this assertion, Camelot contends that the trial court erred in denying it the opportunity to present parol evidence on the issue of contract formation.

"Where the parties to an agreement adopt a writing as the final and complete expression of their agreement, alleged prior or contemporaneous oral representations or agreements concerning subjects that are specifically covered by the written contract are merged in or superseded by that contract." *Blumenstock v. Gibson*, 811 A.2d 1029, 1035 (Pa. Super. 2002) (citation omitted). Absent fraud, accident, or mistake, a written contract is not only the best, but the only evidence of the terms of the parties' agreement. *See id*., at 1035. Therefore, parol evidence is not

admissible to modify the terms of the written contract in the absence of an averment of fraud, accident or mistake.  **See id**., at 1036.

Based upon the testimony of Barrasse that he signed the service agreement in his capacity as a consultant for Camelot, combined with the fact that the parties operated as if an agreement had been reached for almost two years, we cannot conclude that the trial court's conclusion constituted an abuse of discretion.  The written service agreement constitutes the best evidence of the agreement that the parties operated under for nearly two years.  While Camelot pled that Barrasse had been fraudulently induced to sign the service agreement, his prior experience with Dempsey, as well as the explicit language of the agreement, provide sufficient support for the trial court's implicit finding that Camelot had not established fraudulent inducement.  Thus, parol evidence was inadmissible. As such, the trial court's findings find support in the record, and do not constitute an abuse of discretion.  We therefore affirm the trial court's order compelling arbitration.

Judgment affirmed.  Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/24/2014