J-A13040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DONALD ROYCE AND HEATHER ROYCE H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FITNESS GEAR USA AND DICK'S SPORTING GOODS INC. | : | No. 1400 EDA 2019 |
| | : | |
| v. | : | |
| | : | |
| DALPS & LEISURE PRODUCTS SUPPLY CORP. | : | |
| | : | |
| APPEAL OF: DALPS & LEISURE PRODUCTS SUPPLY CORP. | : | |

Appeal from the Order Entered April 4, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): No. 3779 Aug. Term, 2014

BEFORE:   BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED SEPTEMBER 3, 2021**

Appellant, Dalps & Leisure Products Supply Corp. ("Dalps"), appeals

from the order entered by the Court of Common Pleas of Philadelphia County

Civil Division granting Appellee Dick's Sporting Goods Inc.'s ("Dick's")

Amended Motion for Summary Judgment seeking to recover legal fees and

---

[*] Former Justice specially assigned to the Superior Court.

expenses it incurred in defending against Plaintiffs' products liability claims. Upon careful review of precedent and the record, we affirm.

The trial court provides an apt account of the relevant facts and procedural history in its opinion of September 4, 2020, which we supplement with salient additional information denoted by brackets.

**Factual Background**

Appellees Donald and Heather Royce ("Royce") brought suit in the above-captioned products liability action on August 28, 2014, alleging that while Mr. Royce was using a stability ball, the stability ball burst, resulting in Mr. Royce suffering severe head trauma, and leaving him incapacitated. Royce brought suit against two (2) parties: (1) Appellee Fitness Gear, USA ("Fitness Gear"), whose logo was allegedly found on the owner's manual for the stability ball and represented that the stability ball was safe for home use, and (2) Appellee Dick's Sporting Goods ("Dick's"), who allegedly sold the defective stability ball to Royce.

Dick's had entered into a Vendor Agreement ("Agreement") with Additional Defendant Dalps & Leisure Products Supply Corporation ("Dalps"), a corporation located in Taiwan, on December 1, 2012. Pursuant to the Agreement, Dalps was to provide various products, including the stability ball in question, which would be sold in Dick's retail stores throughout the Commonwealth of Pennsylvania. The Agreement included a provision whereby Dalps agreed to indemnify and defend Dick's from and against any and all claims involving the products manufactured by Dalps. Dalps was also obligated to name Dick's as an additional insured on an insurance policy that provided coverage for product liability claims. In response to Royce's litigation filed against Dick's, Dick's tendered its defense to Dalps on multiple occasions. However, Dalps never responded and failed to honor its contractual obligations.

**Procedural Background**

On March 19, 2015, Dick's filed a Joinder Complaint against Dalps in the above-captioned action, asserting contractual and common

- 2 -

law claims for defense and indemnity. [Referenced in support of this assertion was a 2005 Vendor Agreement between Dick's and Dalps which indicated Dalps' obligation to indemnify and defend Dick's.] Dick's Joinder Complaint was served on Dalps in Taiwan on February 1, 2016 through appropriate diplomatic channels. Dalps filed an Answer to Dick's Joinder Complaint on August 5, 2016 [alleging, *inter alia*, that Dalps was without sufficient knowledge of such agreement to determine the accuracy of Dick's complaint, as the 2005 Vendor Agreement had not been attached to the complaint.]

On January 3, 2017, Dick's filed an unopposed motion for leave to file an Amended Joinder Complaint. [Specifically, the Amended Joinder Complaint averred that there was a more recent Vendor Agreement, entered into by the parties on November 28, 2012, that referenced Dalps' obligation to indemnify and defend Dick's in litigation stemming from Dick's sale of Dalps' merchandise**]**. On February 13, 2017, the now retired, Honorable Lisa M. Rau, then a Judge of the Court of Common Pleas, granted the motion, and Dick's subsequently filed an Amended Joinder Complaint with notice to defend on February 14, 2017. Dalps was served via the Court's electronic filing system on February 15, 2017. However, Dalps never filed a responsive pleading to the Amended Joinder Complaint, despite the Amended Joinder Complaint being properly endorsed with a notice to defend.]

[On July 28, 2017, a United States magistrate judge for the Western District of Pennsylvania filed a report and recommendation in ***Dick's Sporting Goods, Inc. v. PICC Property & Casualty Co.***, 2017 WL 3268567, adopted as Opinion of the Court, 2017 WL 3783020 (W.D.PA 2017) (August 30, 2017). In this related federal matter, Dick's had asserted third-party beneficiary status under a contract between Dalps and PICC, Dalps' insurance carrier, to seek a declaratory judgment that PICC had a duty to defend and indemnify Dick's in the present Royce litigation. Specifically, the magistrate judge determined that a forum selection clause in the insurance contract between Dalps and PICC required Dick's to bring its suit in Taiwan. On August 30, 2017 decision, the U.S. District Court adopted the report and recommendation issued by the magistrate judge.]

[From February through August of 2017, the trial court issued several revised case management orders, which scheduled completion of discovery by September 4, 2017. During this time,

Dick's filed a motion to compel the deposition of Dalps' corporate representative, which motion disclosed to the trial court that "the parties have entered into a discontinuance, which will dismiss Plaintiffs' [the Royces'] claims, but preserve Moving Defendant's [Dick's] claims against Dalps." Dick's Second Motion to Compel Deposition, 8/14/17.]

[On the following day, August 15, 2017, the Royces filed a "Praecipe to Discontinue and End," which recited:

> Plaintiffs [the Royces] . . . agree to voluntarily discontinue and end all causes of action asserted by Plaintiffs only . . . with prejudice, and further dismiss claims they have or may have against Dalps & Leisure Products Supply Corp., and will no longer bring any action arising from the subject stability ball against Dalps . . . . The claims and causes of action stated in the Amended Complaint of . . . Dick's . . . joining Dalps . . . as an Additional Defendant are preserved and this discontinuance shall not affect the claims raised therein . . . ."

*Praecipe* to Discontinue and End, 8/15/17. Notably, the *Praecipe* to Discontinue was signed by all counsel, including counsel for Dalps.]

[On August 22, 2017, in response to the Royces' discontinuance, counsel for Dalps filed a motion to withdraw from representation, noting that Dalps' insurance carrier PICC states its contractual obligation to defend against the Royces' claims ceased with the discontinuance, and that it "will not compensate counsel for the legal defense of Dalps in the third-party action."]

[The trial court entered its Order of August 30, 2017, scheduling a hearing for October 5, 2017, at which it was to address the recently filed motions to compel depositions and counsel's motion to withdraw. In its order, the trial court also instructed counsel for Dalps to advise Dalps of the order, which further required Dalps "to appear at this hearing so [the trial court] can, if necessary, discuss with [Dalps] representatives the rules that prohibit corporations from representing themselves in Pennsylvania."]

[Subsequently, on October 5, 2017, the trial court filed several orders, the first of which granted Dick's motion to compel answers to its third set of interrogatories and document requests.]

[With regard to Dalps' continued participation in the present litigation, the court ordered that "Counsel for Dalps is relieved of representation after filing an affidavit that the client has been notified of these Orders (Discovery and Counsel Withdrawal) and notified of the rules prohibiting corporations from representing themselves, and has provided email, phone number and address information to the Court and opposing counsel." The trial court's order continued, "If Dalps & Leisure Products Supply Corp. fails to comply with this Order, it risks the imposition of sanctions upon further application to the [trial court]." Order, 10/5/17, 1-2.]

[The court also granted Dick's motion to compel depositions of Dalps' representatives with three specific witnesses designated to testify within 60 days from the entry of the order.]

[On October 16, 2017, after conducting a hearing on the motion to withdraw filed by counsel for Dalps and confirming counsel had performed all tasks asked of it, the trial court entered an order acknowledging that no further action was required for withdrawal.]

[Despite the foregoing steps taken by the trial court to advise Dalps that procedural and court rules required it to be represented by counsel before it could resume defending against Dick's amended joinder complaint and complying with the court's discovery orders, Dalps never retained replacement counsel.]

[Accordingly, on February 7, 2018, the trial court entered an order granting Dick's motion for sanctions against Dalps for its continued failure to comply with multiple discovery orders. Specifically, the sanctions precluded Dalps from opposing at trial or by response to any motion all claims that Dalps was responsible for the design, manufacture and sale of the Stability Ball— including the Stability Ball involved in the present matter— supplied the Stability Ball to Dick's pursuant to a Vendor Agreement, and owed defense and indemnity to Dick's pursuant to the Vendor Agreement.]

On March 5, 2018, Dick's filed a Motion for Summary Judgment against Dalps which averred, *inter alia*, that Dalps had waived any

objections to jurisdiction, venue or service of process by failing to file preliminary objections to the Joinder Complaint and waived all defenses to Dick's claims by failing to file any responsive pleading to the Amended Joinder Complaint. Dick's attached the 2012 Vendor Agreement to the Motion.

Over four months later, on July 24, 2018, Dick's filed an Amended Motion for Summary Judgment to update the trial court record for purposes of calculating anticipated damages.**]**

Dalps did not respond to either Motion, and the Honorable John M. Younge,[] then a Judge of the Court of Common Pleas, granted Dick's Amended Motion for Summary Judgment as uncontested on September 7, 2018. Judge Younge further Ordered that an Assessment of Damages Hearing be held at a later date. The Assessment of Damages Hearing was ultimately held on March 20, 2019 before [the trial court]. At that hearing, Dalps was not present, while Dick's presented two (2) witnesses: (1) Suzanne Crowley, Accounts Receivable Coordinator at Marshall Dennehey, and (2) Vlada Tasich of Marshall Dennehey, Counsel for Dick's.

Ms. Crowley testified as to the veracity of the invoices issued by Marshall Dennehey to Dick's during the course of the litigation, as well as documents detailing work in progress in the litigation that had not yet been billed. The total amount billed and yet to be billed was $413,787.82. N.T., 3/20/19, at 11. Mr. Tasich testified as to the nature of the injuries in question, and the process of properly serving Dalps, which involved several attempts and the use of process servers in Taiwan.

Mr. Tasich also testified as to the nature of the Agreement between Dick's and Dalps. Under the terms of the Agreement, Dick's was entitled to recover attorney fees and costs both for the defense of the instant matter against Royce, as well as for Dalps' breach of their obligation under the Agreement to provide Dick's with their costs incurred. Mr. Tasich also testified that the costs incurred for representing Dick's at the Assessment of Damages Hearing amounted to an additional $355.00, for an ultimate total of $414,142.82 (N.T., 3/20/19, at 22). Having heard testimony from these witnesses, [the lower court] entered a Judgment on April 2, 2019, assessing damages in the amount of $414,142.82 in favor of Dick's and against Dalps.

On May 3, 2019, Dalps filed a [counseled] notice of appeal to the Superior Court, and on June 5, 2019, Dalps filed a statement of matters complained of on appeal. On appeal, [Dalps] raises the following issues:

1. That Judge Younge's decision, granting Dick's motion for Summary Judgment, entered on September 7, 2018, is subject to collateral estoppel by virtue of the U.S. District Court for the Western District of Pennsylvania's decision in ***Dick's Sporting Goods, Inc. v. PICC Property and Casualty Company, Ltd***, 2017 WL 3268567 (W.D. Pa 2017).

2. That [the lower court] should stay any and all proceedings related to the enforcement of Judge Younge's decision pending arbitration of the claims by Dick's.

3. That [the lower court's] judgment, assessing damages in the amount of $414,142.82 in favor of Dicks and against Dalps, entered on April 2, 2019, be vacated to the extent that it is based on sanctions imposed upon Dalps for violation of discovery rules and related court orders.

4. That, to the extent that [the lower court's] Judgment, assessing damages in the amount of $414,142.82 in favor of Dick's and against Dalps, entered on April 2, 2019, was based on sanctions imposed upon Dalps for violation of discovery rules and related Court orders, [the lower court] should stay any and all enforcement proceedings relating to the Judgment because of the circumstances surrounding these violations.

[Appellant's Pa.R.A.P. 1925(b) statement, 6/5/2019].

Trial Court's Pa.R.A.P. 1925(a) Opinion, 9/4/2020, 1-4.

In Dalps' brief submitted on appeal, it has withdrawn the latter two issues to focus on its defense of collateral estoppel and its alternative claim

calling for a stay in the present proceedings to allow for arbitration of this matter. We therefore address the first two issues in turn.

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. *Mee v. Safeco Ins. Co. of America*, 908 A.2d 344, 347 (Pa. Super. 2006).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa. Super. 2000) (internal citations and quotation marks omitted). Our scope of review is plenary. *Pappas v. Asbel*, 768 A.2d 1089, 1095 (Pa. 2001), *cert. denied*, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002).

"[C]ollateral estoppel [is an] affirmative defense[] which must be pleaded in an answer as new matter. A defense not so raised is waived." *Hopewell Estates, Inc. v. Kent*, 646 A.2d 1192, 1194 (Pa. Super. 1994) (citations omitted); Pa.R.C.P. 1030(a). *See also Vacula v. Chapman*, 230 A.3d 431, 438 (Pa. Super. 2020).

Dalps' argument for collateral estoppel centers on litigation filed by Dick's against Dalps in the United States District Court for the Western District of Pennsylvania, in which Dick's exercised its third-party beneficiary status under a separate contract between Dalps and PICC, Dalps' insurance carrier,

- 8 -

to seek a declaratory judgment that PICC had a duty to defend and indemnify Dick's in the Royce litigation. In the U.S. District Court's August 30, 2017 decision, it adopted the report and recommendation of the United States Magistrate Judge granting PICC's motion to dismiss because a forum selection clause in the insurance contract between Dalps and PICC required litigation to be brought in Taiwan. *See Dick's Sporting Goods, Inc. v. PICC Property & Casualty Co.*, 2017 WL 3268567, adopted as Opinion of the Court, 2017 WL 3783020 (W.D. Pa 2017).

Dalps assails the present order granting Dick's Amended Motion for Summary Judgment as one based on an incomplete record stemming from Dick's failure to report the United States District Court's decision. Regarding the decision, Dalps argues, "there is no evidence that the Western District litigation, nor the District Court's ultimate ruling, was ever disclosed to the Philadelphia County trial court judge." Appellant's brief, at 8.

In the opinion of the trial court, however, Dalps had ample opportunity to raise its collateral estoppel defense based on the *Dick's Sporting Goods, Inc.* decision but failed to do so. The court concludes that Dalps' inaction during the nearly one year that transpired between the federal decision and Appellant's Amended Motion for Summary Judgment constitutes waiver of this claim.

We agree with the trial court's opinion that Dalps' failure to raise this collateral estoppel claim below was not for lack of awareness of the related federal decision but was, instead, consistent with its procedural posture of

- 9 -

inaction that followed its filing of an answer and new matter to Dick's initial joinder complaint. *See* Trial Court Opinion at 4-7 (noting nearly two years transpired between the federal decision and Dalps' appeal, during which Dalps could have filed an amended pleading with the trial court to reflect the outcome of the U.S. District Court for the Western District of Pennsylvania's decision and raise collateral estoppel as a defense, but failed to do so).

Indeed, we deem inexplicable Dalps' failure to heed the trial court's October 6, 2017 advisement that the order discontinuing the Royces' suit against Dick's had no effect on Dick's amended joinder complaint against Dalps for legal fees and expenses incurred in defending against the Royce suit. The court's advisement explained that Dalps would have to replace then-current counsel—who had notified Dalps that the discontinuance of the Royce suit terminated PICC's obligation to supply counsel to Dalps—because applicable procedural and court rules prohibit corporations from self-representation. Notably, a companion order entered on the same date had granted Dick's motion to compel Dalps' participation in discovery within 30 days of the order and production of requested witnesses within 60 days, on pain of court-imposed sanctions, thus giving further notice to Dalps that this aspect of the litigation was moving forward.

Despite this pressing timeline and the obvious risks associated with inaction, Dalps retained no counsel and ignored the court's discovery order. It followed that Dalps continued in its failure to raise for the trial court's

- 10 -

consideration its present claim that the District Court's decision collaterally estopped Dick's claims asserted in the Amended Joinder Complaint.

At the very least, Dalps had from August 30, 2017, the date on which the District Court adopted the U.S. Magistrate's report and recommendation, to February 7, 2018, the date of the trial court's order granting sanctions, to file either an amended answer and new matter to Dick's initial joinder complaint or an answer and new matter to Dick's amended pleading raising a claim of collateral estoppel based on the District Court's decision.

In light of such facts, therefore, we conclude that Dalps may not now, for the first time at this late juncture, be heard to assert collateral estoppel or to complain about the court's lack of notice regarding the federal decision. As such, Dalps has waived his argument for collateral estoppel. *See Hopewell Estates*, *Inc.*, *supra*.

In similar fashion, Dalps posits in its remaining issue that the absence of the 2012 Vendor Agreement from the Amended Joinder Complaint prevented ascertainment of the arbitration clause therein governing the parties. Dalps, therefore, insists that its failure to seek arbitration through preliminary objections should not defeat his claim asking this Court to stay the present matter should be stayed pending arbitration.

Specifically, Dalps argues:

> In this case, Dalps' ability to pursue arbitration of its dispute with Dick's turns in large part upon its failure to present this issue in the trial court prior to entry of judgment. In the majority of cases, the appellate analysis would end there.

Here, however, the Rules of Civil Procedure which required disclosure of the arbitration clause—as contained within the vendor agreement on which Dick's based its claims—were violated on multiple occasions by Dick's, which also concealed from the trial court its related litigation in the Western District of Pennsylvania. On August 15, 2017 Donald and Heather Royce dismissed their claims against all party-defendants including Dick's and Dalps'. ***Taylor*** [***v. Extendicare Health Facilities, Inc.***, 147 A.3d 490 (Pa. 2016)] provides the only guidance necessary to conclude that the judgment against Dalps should be vacated and the cause [sic] remanded to the trial court, without prejudice to Dick's right to pursue its claims in arbitration pursuant to the Vendor Agreement.

Appellant's brief at 48-49.

Dalps, however, is a sophisticated business entity who was a party to

the 2012 Vendor Agreement containing the arbitration clause,[1] and it was

---

[1] As noted *supra*, Dalps filed an answer to Dick's initial joinder complaint and its reference to the Dick's/Dalps 2005 Vendor Agreement, which was not attached to the complaint, by denying knowledge of such agreement. Where the responding party is without knowledge or information sufficient to form a belief as to the truth of a particular averment, a response to that effect generally will be deemed a denial. Pa.R.C.P. 1029(c). However, where it is clear that the responding party must know whether a particular averment is true or false, the party may not rely on Rule 1029(c). ***See Id.***, note (citing ***Cercone v. Cercone***, 386 A.2d 1 (Pa. Super. 1978) ("Reliance on subdivision (c) does not excuse a failure to admit or deny a factual allegation when it is clear that the pleader must know whether a particular allegation is true or false."). A response of this sort by a party who, as a matter of course, would have knowledge sufficient to respond, will operate as an admission. ***Cercone***, 386 A.2d at 4–5.

For similar reasons, we reject Dalps' position that the Amended Joinder Complaint's mere reference to the Dick's/Dalps 2012 Vendor Agreement, without the inclusion of an accompanying attachment of said agreement, precluded Dalps from learning of its rights under the agreement's arbitration clause and timely asserting such rights in a responsive pleading before the trial court. Knowledge of its own 2012 vendor agreement with Dick's must be imputed to Dalps for purposes of addressing Dalps' equitable argument that
*(Footnote Continued Next Page)*

- 12 -

represented by counsel during the pleading stages of the present matter. For these reasons, we agree with the trial court's determination that it was incumbent upon Dalps to file a responsive pleading in the form of preliminary objections to the Amended Joinder Complaint asserting that the 2012 Vendor Agreement referenced therein contained a compulsory arbitration clause governing the claims raised.[2]  Instead, at no point during the course of litigation before the trial court did Dalps invoke either the referenced 2012 Vendor Agreement or the arbitration clause contained within it.

While our jurisprudence has expressed a preference for arbitration, it has not relieved defendants of their obligation to raise the issue for consideration by filing of timely preliminary objections asserting their rights under an agreement to arbitrate. As we have explained:

> Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the Federal Arbitration Act ("FAA")[, 9 U.S.C.S. §§ 1–16]. The fundamental purpose of the Federal Arbitration Act is to relieve the parties from expensive litigation and to help ease the current congestion of court calendars. Its passage was a congressional declaration of a liberal federal policy favoring arbitration agreements.

---

Dalps "concealed" the agreement from both Dalps and the trial court. Moreover, Dalps could have filed preliminary objections to the Amended Joinder Complaint for Dick's failure to attach a copy of the referenced agreement pursuant to Pa.R.C.P. 1019(i), but it did not do so.

[2] An agreement to arbitrate may be asserted by preliminary objection or by petition to compel arbitration pursuant to the Uniform Arbitration Act, 42 Pa.C.S. § 7304, or the common law, 42 Pa.C.S. § 7342(a).

> ***Pisano*** [***v. Extendicare Homes, Inc***., 77 A.3d 651, 660 (Pa. Super. 2013)] (internal citations, brackets and quotations omitted). However, we cautioned that "the existence of an arbitration provision and a liberal policy favoring arbitration does not require the rubber stamping of all disputes as subject to arbitration." ***Id.*** at 661 (citation omitted).

***Gollick v. Sycamore Creek Healthcare Group, Inc.***, 20121 WL 3206108 (unpublished decision filed July 29, 2021).

Herein, Dalps maintains the present matter comes under ***Taylor v. Extendicare Health Facilities, Inc.***, 147 A.3d 490 (Pa. 2016), in which the Pennsylvania Supreme Court acknowledged that the FAA's "overarching purpose" of ensuring enforcement of arbitration agreements supersedes conflicting state laws except for those permitting courts to regulate contracts of arbitration in accord with general contract law principles.

Accordingly, ***Taylor*** held that in a wrongful death/survival action filed by the estate of a nursing home resident against the nursing home, the arbitrable survival action must proceed to arbitration despite concerns over piecemeal litigation inherent in the Pennsylvania wrongful death statute. ***See id.*** at 507-11 (holding FAA preempted trial court's application of Pa.R.C.P. 213(e), which requires the consolidation of survival and wrongful death actions for trial).

Contrary to Dalps' position, nothing in ***Taylor*** precludes a finding of waiver in the present matter. Initially, we note that ***Taylor*** is factually distinguishable from the case *sub judice*, as the defendant nursing home timely raised preliminary objections seeking to compel arbitration pursuant to an Alternative Dispute Resolution agreement between the decedent resident

- 14 -

and itself, and it appealed from the trial court order overruling its preliminary objections.

Furthermore, the Pennsylvania Supreme Court's rationale in *Taylor* does not relieve defendants of their burden to raise preliminary objections asserting the enforceability of arbitration agreements. Instead, the holding recognized a commitment to federalized arbitration under the FAA as expressed in United States Supreme Court decisions "striking down conflicting state laws . . . targeting arbitration agreements[,]" with exceptions thereto limited to deferring to state court's discretion to "invalidate arbitration agreements on generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* at 509.

Critically, the present case does not involve the application of state law standing in conflict with the arbitration of claims pursuant to the FAA, nor did the trial court here invalidate the arbitration agreement on any basis. Instead, our decision turns entirely on Dalps' failure in the first instance to assert its arbitration rights under its agreement with Dick's through properly filed preliminary objections.

This Court has consistently recognized that a party may waive its contractual rights to arbitration by displaying a willingness to proceed with the judicial process prior to raising its rights under the arbitration clause.[3] In

_____

[3] Unlike the defendants/appellants in *DiDonato*, *infra*, and the other decisions cited therein, Dalps never raised its rights under the arbitration
*(Footnote Continued Next Page)*

- 15 -

*DiDonato v. Ski Shawnee*, *Inc.*, 242 A.3d 312 (Pa. Super. 2020), we observed:

> When deciding whether a party accepted judicial process to constitute waiver of a claim to arbitration, courts assess whether the party: (1) failed to raise the issue of arbitration promptly; (2) engaged in discovery; (3) filed pretrial motions that do not raise the issue of arbitration; (4) waited for adverse rulings on pre-trial motions before asserting arbitration; **or** (5) waited until the case is ready for trial before asserting arbitration. *O'Donnell [v. Hovnanian Enterprises*, *Inc.*, 29 A.3d 1183, 1187 (Pa. Super. 2011)]. Significantly, a party "cannot avail itself of the judicial process and then pursue an alternate route when it receives an adverse judgment. To allow litigants to pursue that course and thereby avoid the waiver doctrine and our rules of court is to advocate judicial inefficiency; this we are unwilling to do." *Samuel J. Marranca General Contracting Co. v. Amerimar Cherry Hill Associates*, 416 Pa. Super. 45, 610 A.2d 499, 502 (1992). Nevertheless, "the mere filing of a complaint or answer without resulting prejudice to the objecting party will not justify a finding of waiver of the right to arbitration." *LSI*, *supra* at 392 (quoting *Keystone Tech. Group*, *Inc. v. Kerr Group, Inc.*, 824 A.2d 1223, 1226 (Pa. Super. 2003)).
>
> In *Samuel J. Marranca*, *supra*, the appellee filed his complaint on June 25, 1990. The appellant filed preliminary objections alleging improper venue and *forum non conveniens*. After the court overruled the preliminary objections, the appellant filed its answer on July 11, 1991. Approximately two weeks later, the appellant first asserted a demand for arbitration. After the appellee refused this request, the appellant filed a motion to compel arbitration and stay judicial proceedings. The trial court decided the appellant had waived any right to arbitration, stating:
>
> > The record in this case unequivocally establishes a willingness on the part of [the appellant] to have the Court of Common Pleas adjudicate the issues being

_____

clause in the proceedings before the trial court, which only makes stronger the case for waiver in the present matter. Nevertheless, we find the decisional law discussed below controlling of the present matter.

raised without resort to arbitration as long as the [c]ourt was not the Luzerne County Court of Common Pleas. Clearly, [the appellant] was ready to litigate this case in another jurisdiction and, accordingly, we find it difficult to understand and/or appreciate how, after having made and lost the venue and *forum non conveniens* arguments, it can now contend that the arbitration is mandatory and not elective.

**Samuel J. Marranca**, *supra* at 500-01.

On appeal, this Court agreed with the trial court's conclusion that the appellant waived its right to enforce the arbitration clause. This Court reasoned:

**Here, [the appellant's] conduct amounts to waiver. [The appellant] chose not to file a petition to compel arbitration. [The appellant] also elected not to assert arbitration as an affirmative defense either in preliminary objections or in new matter. Instead, [the appellant] waited until it had received an adverse ruling on pretrial motions before invoking and seeking to enforce the arbitration provision of the contract. ...**

*Id.* at 501.

**DiDonato**, 242 A.3d at 318-19 (emphasis in final paragraph added).

We find that Dalps' conduct in the present action implicates several of the disjunctively stated considerations for waiver enumerated in **DiDonato**: Dalps failed altogether to raise the issue of arbitration—let alone promptly; responded to the initial joinder complaint with an Answer and New Matter raising numerous defenses but filed no objection addressed to the issue of arbitration; made it necessary for the court to expend judicial resources in issuing multiple orders to enforce a year-long discovery period and impose sanctions; and, perhaps most important, allowed the case to proceed to

disposition, where Dalps incurred an adverse summary judgment, before only then asserting for the first time in the present appeal its rights to arbitration.

The considerations recognized by our decisional law identify dilatory behaviors as grounds for waiver, and Dalps' actions fall squarely within their scope. *See O'Donnell*, 29 A.3d at 1189 (arbitration waived where defendant's allowing judicial process to extend for months was prejudicial, costing plaintiff time, effort, and money in preparing amended complaints and filing motions, and causing trial court to expend time and effort reviewing motions and issuing orders).

Again, despite its position as a counseled, sophisticated business entity who was party to a vendor agreement with an applicable arbitration clause, Dalps allowed litigation to proceed without claiming a right to arbitration. It, therefore, adopted a procedural posture during the extensive relevant time which must be construed as "involv[ing] [a] conscious engagement with the judicial process that cannot be ignored[, requiring one to conclude its conduct] was inconsistent with a purpose to stand on the contract arbitration provision as to leave no opportunity for a reasonable inference to the contrary." *Id.* (quoting *Goral v. Fox Ridge, Inc.,* 683 A.2d 931, 933 (Pa. Super. 1996).[4] For this reason, we conclude Dalps has waived its claim for arbitration.

_____

[4] Dalps also made no attempt to file an amended preliminary objection raising a claim for binding arbitration under the 2012 Vendor Agreement even after Dick's attached the Agreement to both its motion for summary judgment and its amended motion for summary judgment. While we acknowledge the trial
*(Footnote Continued Next Page)*

Accordingly, as we discern no reason to disturb the trial court's order granting summary judgment in favor of Dick's, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/3/2021

---

court had issued its Order granting Dick's motion for sanctions, the Order was limited to precluding Dalps from opposing all claims that Dalps designed, manufactured, and supplied the Stability Ball in question to Dicks pursuant to the 2012 Vendor Agreement that also required Dalps to indemnify and defend Dick's. It would seem, however, that a preliminary objection asserting transfer for arbitration would not oppose any of these claims but would simply maintain the claims must be brought in arbitration.