**WARWICK TOWNSHIP WATER AND SEWER AUTHORITY**

v.

**BOUCHER & JAMES, INC., Adams Associates and T.J. Sharp, Inc.**

**Appeal of: T.J. Sharp, Inc.**

Superior Court of Pennsylvania.

Argued Oct. 28, 2003.
Filed June 2, 2004.

13. This is appellants' third issue on appeal.

John G. Richards, Conshohocken, for appellant.

Richard P. Kovacs, Easton, for Boucher & James, appellee.

Michael P. Clarke, Trevose, for Warwick Township, appellee.

Before: DEL SOLE, P.J., HUDOCK and TODD, JJ.

DEL SOLE, P.J.

¶ 1 This is an appeal from a trial court order overruling Appellant's preliminary objections which sought to have the trial court stay the proceedings and compel arbitration alleging that the parties had an agreement to arbitrate the matter at issue. Upon review we conclude Appellant's preliminary objections should have been granted, and we reverse and remand.

¶ 2 Appellee, Warwick Township Water & Sewer Authority (the Authority) filed a complaint against T.J. Sharp, Inc. (Appellant), Boucher & James Inc. (Boucher) and Adams Associates (Adams). The Authority had contracted with Boucher as an engineer to design and oversee the construction of an expansion project for a wastewater treatment plant. Boucher in turn contracted with Adams to prepare design plans and specifications. Appellant, a contractor, was the successful bidder on the project and became party to the contract documents. Tanks were designed for the project and built to completion, after which the Authority issued final payment to Appellant, who in turn signed

a "Contractor's Release." The Authority alleged that the tanks had structural problems resulting in cracking which required significant repair and remediation. The Authority thus sought recovery for breach of contract, breach of implied warranties, and negligence against Appellant. Appellant responded with the filing of preliminary objections alleging that the complaint was improperly filed with the Court of Common Pleas of Bucks County because the contract dictated that the parties agreed to submit all disputes arising under the contract to arbitration before the American Arbitration Association. The trial court ultimately overruled Appellant's preliminary objections, and this appeal followed.[1]

■ ¶ 3 Where a party to a civil action seeks to compel arbitration the trial court must first determine if a valid agreement to arbitrate exists between the parties. If the trial court determines that such an agreement does exist, it must then determine if the dispute involved is within the scope of the arbitration provision. "The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally." *Keystone Tech. Group, Inc. v. Kerr Group, Inc.*, 824 A.2d 1223, 1227 (Pa.Super.2003). If it appears that a dispute relates to a contract's subject matter and the parties agreed to arbitrate, all issues of interpretation and procedure are for the arbitrators to resolve. *Theodore C. Wills Co. v. Sch. Dist.*, 837 A.2d 1186, 1189 (Pa.Super.2003). The existence of an agreement and whether a dispute is within the scope of the agreement are questions of law and our review is plenary. *Keystone*, 824 A.2d at 1227.

¶ 4 At issue in this case are the provisions of the contract and the Contractor's Release. Appellant asserts that the following contract language is applicable and requires arbitration:

16.1 All claims, disputes and other matters in question between [the Authority] and [Appellant] arising out of or relating to the Contract documents or the breach thereof (except for claims which have been waived by the making or acceptance of final payment as provided in paragraph 14.15) will be decided by arbitration in accordance with the Construction Industry Rules of the American Arbitration Association then obtaining ...

In reviewing this language the trial court ultimately concluded that it applied only for disputes arising during construction, not after the completion of construction and final payment. It found support for this in paragraph 9.11 of the contract which provides:

Claims, disputes and other matters relating to the acceptability of the Work or the interpretation of the requirements of the contract documents ...will be referred initially to ENGINEER in writing with a request for a formal decision.... ENGINEER's written decision on such claim, dispute or other matter will be final and binding upon OWNER and CONTRACTOR unless (1) an appeal from the ENGINEER's decision is taken within the time limits and in accordance with the procedures set forth in [the]... "Dispute Resolution Agreement" entered into between OWNER and CONTRACTOR pursuant to Article 16.

1. The trial court initially granted the preliminary objections, but later vacated its order. See Orders of Court, 7/12/02 and 12/12/02. It subsequently ruled that Appellant's preliminary objections should be denied. Order of Court, 5/2/03.

The trial court concluded that this language indicates that the arbitration clause was intended to apply only to claims made during construction and that an ENGINEER's decision is a condition precedent to submission to arbitration. We do not read paragraph 9.11 of the contract as applicable to the instant situation. Admittedly it sets forth the procedure for disputes which concern the acceptability of work or the interpretation of contract documents, which will presumably occur during construction and which ultimately may lead to arbitration. However the matter at issue concerns the ultimate work product and its performance. It is governed by the terms of the dispute resolution agreement entered into between the Authority and Appellant and specifically paragraph 16.1 as cited by Appellant.

¶ 5 The trial court further found that this particular dispute is outside the arbitration provision because paragraph 16.1 makes an exception "for claims which have been waived by making or acceptance of final payment." Agreement ¶ 16.1; Trial Court Opinion, 6/11/03, at 4–5. The agreement, however, goes on to provide that the exception shall apply to those claims waived "as provided by paragraph 14.15." *Id.* Paragraph 14.15 sets forth which claims are extinguished upon final payment. It provides:

14.15 The making and acceptance of final payment will constitute:

14.15.1. a waiver of all claims by OWNER against CONTRACTOR, except claims arising from unsettled Liens, from *defective* work appearing after final inspection pursuant to paragraph 14.11, from failure to comply with the Contract documents or the terms of any special guarantees specified therein, or from CONTRACTOR's continuing obligations under the contract documents; and

14.15.2. a waiver of all claims by CONTRACTOR against OWNER other than those previously made in writing and still unsettled.

(emphasis in original). The language in this paragraph, read in conjunction with paragraph 16.11 directs that the instant dispute be decided by arbitration. This is a dispute of a claim which has not been waived as a result of final payment. It concerns the Authority's allegation that Appellant performed defective work which became apparent after final payment. The Complaint alleges at paragraph 39:

Not until [the Authority's] receipt of Carroll's February 2001, assessment of the Project did [the Authority] determine that the defective conditions present in the Project were the result of serious structural design and construction deficiencies that compromised the structural integrity of the Project.

Complaint, ¶ 39. In addition to alleging certain defects in Appellant's work which were not immediately apparent, the Authority alleged a breach of warranty claim, which places it within the category of claims that are not waived under the express terms of paragraph 14.15. Thus, absent any applicable waiver provision and absent any explicit contract language requiring any demand for arbitration be made prior to final payment, the arbitration provision of paragraph 16.1 should govern this matter. Contrast *Westmoreland Hospital Assn. v. Westmoreland Construction Co.*, 423 Pa. 255, 223 A.2d 681, 682 (1966) (where the contract provided that "no demand for arbitration shall be made after the date of final payment" except with regard to any guarantee provisions).

■ ¶ 6 The trial court also found the demand for arbitration was non-effective in view of contractor's release signed by Appellant. It states:

[Appellant] ... upon receipt of and from [the Authority], the sum of $3,006,113.28 (do) (does) remise, release quit-claim and forever discharge the [Authority] ... of and from any claims and demands arising from or in connection with the said agreement dated July 1, 1997. Further, the Contractor forever releases the Owner of and from all manner of action and actions, cause and causes of action, suits, debts, dues and duties, sum and sums of money, accounts reckonings, bonds, bills specialties, covenants, contracts, agreements, promises, variances, damages, judgments, extents, executions, claims and demands, whatsoever in law and equity, or otherwise which against the said Owner ever had, now have or which... hereafter can, shall or may have... from the beginning of the world to the date of this document.

Contractor's Release, May 1996. The trial court cites this language and states: "[T]he intent is clear from the plain meaning of the document." Trial Court Opinion at 4. It found Appellant released the Authority from the contract and any claims present or future. We, however, read it differently and conclude it has no effect on Appellant's ability to demand arbitration. The release signed by Appellant upon receipt of payment operates to preclude Appellant from asserting any claims against the Authority. Appellant did not make a claim against the Authority; rather, the Authority made claims alleging Appellant's work was defective. Because this matter concerns a claim not made by Appellant, the release is inapplicable. Paragraphs 16.1 and 14.15 of the contract apply in this instance and govern the arbitration of the Authority's claims which were made after final payment.

¶ 7 The trial court set forth yet another ground for its ruling based upon the fact that the Authority's complaint alleged not only contract and breach of implied warranty claims, but also a claim for negligence. It reasoned that because Paragraph 16 provides that "all claims ... arising out of or relating to the Contract Documents or the breach thereof ... will be decided by arbitration," it cannot apply to this action which includes a claim of negligence. This ruling is contrary to our established case law.

¶ 8 In *Shadduck v. Christopher J. Kaclik, Inc.*, 713 A.2d 635 (Pa.Super.1998), this Court held that an agreement to arbitrate any disputes arising from a contract will encompass tort claims if the facts which support the tort action also support a breach of contract action. *Id.* at 638–639; *Pittsburgh Logistics Sys., Inc. v. Prof'l Transp. & Logistics, Inc.*, 803 A.2d 776, 780 (Pa.Super.2002). We stated: "a claim's substance, not its styling, is to control whether the complaining party must proceed to arbitration or may file in the court of common pleas." *Shadduck*, at 637.

¶ 9 The complaint in *Shadduck* contained language nearly identical to that found in the instant contract. It provided for arbitration of "all claims or disputes between the Contractor and the Owner arising out of, or relating to, this Contract." *Id.* at 637. Owners alleged in their complaint that the builder failed to construct their home in accordance with its oral promises and the specifications in the written contract, listing many alleged defects in their home. They alleged that this action supported their claims of intentional misrepresentations and violations of the Unfair Trade Practices and Consumer Protection Law. The Owner's argument that these claims were temporally and factually distinct from their breach of contract claim was dismissed by the court. It found it was "plain that the same factual

averments underlie both [the] Owners' tort and breach of contract claims." *Id.*

¶ 10 Similarly, in this case the factual averments which underlie the negligence claim are the same as those involved in the contract action. The complaint alleged that Appellant and Adams failed to act with reasonable care "in carrying out their duties on the Project." Complaint at ¶ 88. With respect to Appellant the Authority also alleged that it failed to advise the Authority of "conflicts, error, ambiguities, and/or discrepancies within the Contract Documents ...." *Id.* at ¶ 91(c)-(f). Thus, it is apparent from a reading of the Complaint that the negligence action brought by the Authority necessarily involves the contract and the same factual averments relating to the failure of the project. Accordingly given the broad scope of the arbitration language which provides that arbitration is to be the preferred means to resolve all claims arising out of or relating to the contract documents, it was improper for the trial court to rule that the arbitration provision does not apply to the negligence claim.

¶ 11 For the foregoing reasons we conclude that all claims between the Authority and Appellant must proceed to arbitration. Any remaining matters shall be stayed pending resolution of the arbitration proceeding. Thereafter the trial court can address any remaining claims among the various parties.[2]

¶ 12 Accordingly, we reverse the trial court's order and remand this matter to that court to issue an order directing the matter to arbitration. Jurisdiction relinquished.

---

**2.** Because of the posture of this case our ruling is not in conflict with *Thermal C/M Services, Inc. v. Penn Maid,* 831 A.2d 1189 (Pa.Super.2003). Therein a contractor filed an action to compel an owner to join arbitration proceedings brought by subcontractors for payment. However a related action was pending brought by a number of plaintiffs, including owner, against the contractor, which predated the motion to compel arbitration and which was to dispose of the issue that the contractor sought to arbitrate. On appeal the trial court's decision to deny the motion to compel was affirmed in order to uphold judicial efficiency, maintain the consistency of the verdicts, and to prevent duplicative litigation. The present case concerns a single action brought by the Authority against Appellant and others.