J-A12006-18
J-A12007-18
J-A12008-18
J-A12009-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MAIN STREET BUSINESS FUNDING, LLC AND ROBERT S. GOGGIN, III | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. GOLDNER, JDJSL LLC, DOVECOTE LANE, LLC, JOEL S. LUBER AND REGER RIZZO & DARNELL LLP | : | No. 1544 EDA 2017 |
| | : | |
| APPEAL OF: MICHAEL GOLDNER AND JDJSL LLC | : | |

Appeal from the Order Entered April 21, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  May Term, 2016 No. 02449

| | | |
|---|---|---|
| NANCY CHERNER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MAIN STREET BUSINESS FUNDING, LLC, ROBERT S. GOGGIN, III, ESQUIRE, AND 48 FACTORING, INC. | : | No. 2504 EDA 2017 |
| | : | |
| v. | : | |
| | : | |
| JOEL S. LUBER, MICHAEL GOLDNER AND JDJSL LLC | : | |

APPEAL OF: MICHAEL GOLDNER AND
JDJSL LLC

J-A12006-18
J-A12007-18
J-A12008-18
J-A12009-18

Appeal from the Order Entered July 21, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): August Term, 2016 No. 01661

| | | |
|---|---|---|
| HOWARD GREENBERG | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MAIN STREET BUSINESS FUNDING, LLC, ROBERT S. GOGGIN, III, ESQUIRE, AND 48 FACTORING, INC. | : | No. 2507 EDA 2017 |
| | : | |
| v. | : | |
| | : | |
| JOEL S. LUBER, MICHAEL GOLDNER AND JDJSL LLC | : | |
| | : | |
| APPEAL OF: MICHAEL GOLDNER AND JDJSL LLC | : | |

Appeal from the Order Entered July 3, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): November Term, 2016 No. 01717

| | | |
|---|---|---|
| OLIVIA KIRSCHNER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MAIN STREET BUSINESS FUNDING, LLC, ROBERT S. GOGGIN, III, ESQUIRE, AND 48 FACTORING, INC. | : | No. 2510 EDA 2017 |

- 2 -

|  | : |
|---|---|
|  | : |
|  | : |
| v. | : |
|  | : |
|  | : |
| JOEL S. LUBER, MICHAEL GOLDNER AND JDJSL LLC | : |
|  | : |
|  | : |
| APPEAL OF: MICHAEL GOLDNER AND JDJSL LLC | : |

Appeal from the Order Entered July 27, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  October Term, 2016 No. 03940


BEFORE:  BOWES, J., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                **FILED NOVEMBER 28, 2018**

In these four related appeals, Michael Goldner ("Goldner") and JDJSL LLC ("JDJSL") challenge the trial court's orders overruling their preliminary objections seeking to compel arbitration of various statutory, fraud, and tort-based claims.  After thorough review, we affirm in part and vacate in part.

Main Street Business Funding, LLC ("Main Street") is a financial industry factoring company owned by the Goggin Family Trust and controlled by Robert S. Goggin, III ("Goggin").  Nancy Cherner, Howard Greenberg, and Olivia Kirschner ("collectively "Investors") are investors in Main Street.  In 2014, Goggin, on behalf of Main Street, solicited Goldner's consulting services regarding the operation of Main Street.  Goldner's cousin and lawyer, Joel

Luber, Esquire ("Luber") structured the consultancy with Goldner acting through JDJSL, an entity owned by the Goldner Family Trust, managed by Luber. Luber drafted the Consulting Agreement, which was executed on May 20, 2014, and signed the Agreement as Manager of JDJSL; Goldner was not a signatory to the Agreement. Goggin signed the Consulting Agreement as the "Member" of Main Street.

The five page Consulting Agreement delineated the services JDJSL would provide for Main Street in return for fifty percent of Main Street's "cash flow," defined as "total cash receipts less total cash disbursements and amounts paid in connection with reserves for bad debts." Consulting Agreement, 5/20/14, at ¶5. It also contained an arbitration provision, which provided in pertinent part:

> Arbitration and Fees. Any controversy or claim arising out of or relating to this Agreement, or breach thereof, may be resolved by mutual agreement; or if not, shall be settled in accordance with the Arbitration rules of the American Arbitration Association in Philadelphia, Pennsylvania. Any decision issued therefrom shall be binding upon the parties and shall be enforceable as a judgment in any court of competent jurisdiction.

*Id*. at ¶14.

Main Street and Goggin contend that, subsequently, Goldner, JDJSL, Dovecote Lane, LLC, ("Dovecote"),[1] Luber, and his law firm, Reger Rizzo & Darnell LLC (the "Law Firm"), used their positions of trust to defraud, embezzle, and convert Main Street's assets for their own use. They commenced the first of these actions (the "Goldner case") against those defendants seeking damages for fraudulent misrepresentation, conversion, conspiracy, unjust enrichment, and breach of fiduciary duty. They described two schemes whereby Goldner, JDJSL, and Luber embezzled money from Main Street. In the first scenario, Goggin agreed to make a $150,000 loan to Goldner personally to enable him to purchase the home in Malvern ("Malvern Property") for himself. Instead, Goldner procured in the name of Main Street a $700,000 loan, and used the proceeds to purchase the Malvern Property, which was held by Dovecote for Goldner's use and benefit. The loan was secretly repaid from the coffers of Main Street. The second scheme involved misrepresentations made by Goldner, with Luber's complicity, that overstated Main Street's financial condition in order to obtain millions of dollars in compensation to which he was not entitled. While performing consulting

---

[1] Dovecote is an entity owned by Goldner with one asset, a $1.8 million home in Malvern, Pennsylvania purchased by Goldner with the proceeds of a fraudulently-procured loan in the name of Main Street.

services, Goldner used his access to Main Street funds to embezzle money for his own use and benefit.

Goldner and JDJSL filed preliminary objections to the complaint seeking to compel arbitration of the claims pursuant to the provision in the Consulting Agreement.[2] They characterized all of Main Street's claims as based on excessive compensation, and maintained that they arose out of, or were related to, the Consulting Agreement and, hence, subject to the arbitration provision. Main Street countered that the arbitration agreement did not apply to tort claims generally, and further, that the schemes were unrelated to excessive compensation. Finally, Main Street and Goggin argued that the arbitration agreement was not intended by the parties to encompass the fraudulent conduct perpetrated herein.

By order dated April 21, 2017, the trial court sustained in part preliminary objections seeking to compel arbitration of claims for contract damages, although it did not identify any such claims, but overruled the objections to claims sounding in tort. Furthermore, the court stayed the arbitration pending the outcome of the court action on the tort claims.[3]

---

[2] Luber, the Law Firm, and Dovecote Lane, LLC, did not seek arbitration of the claims asserted against them.

[3] This Court thereafter stayed all proceedings pending these appeals.

In the meantime, Investors Cherner, Greenberg, and Kirschner filed lawsuits against Main Street and Goggin alleging that Main Street had defaulted on its obligations under their notes, that Goggin had made fraudulent representations to them about Main Street's financial condition, and that Main Street and Goggin had violated the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S. § 5101 *et seq*. Main Street and Goggin filed complaints joining JDJSL and Goldner as additional defendants in Investors' cases, alleging that Goldner, Luber, Cherner, and JDJSL violated the Pennsylvania Uniform Fraudulent Transfer Act, and seeking contribution and indemnity. The joinder claims reiterated the claims that Main Street and Goggin had asserted against JDJSL and Goldner, one scheme involving the loan for the Malvern Property, the other the misrepresentation of Main Street's financial condition, which resulted in excess compensation paid to Goldner. In addition, they listed numerous fraudulent transfers made by Goldner to himself, his family, his attorney, and to his victims in a prior Ponzi scheme for which he was criminally convicted, in order to secure a more favorable sentence.

As in the initial Goldner case filed by Goggin and Main Street, JDJSL and Goldner filed preliminary objections seeking to compel arbitration of the joinder claims. Main Street and Goggin urged the trial court to overrule the

preliminary objections on the same basis employed in the Goldner case. The

trial court subsequently entered orders in the Investors' cases, consistent with

the order entered in the Goldner case, overruling preliminary objections in the

nature of a motion to compel arbitration of statutory and tort claims. **See**

Orders dated July 20, 2017 (Cherner case); June 30, 2017 (Greenberg case);

June 30, 2017 (Kirschner case).

JDJSL and Goldner timely appealed the orders entered in all four cases.[4]

The sole issue before us is "Did the [t]rial [c]ourt err in refusing to enforce an

arbitration provision in a commercial agreement?" Appellants' brief at 6.

The commercial agreement is the Consulting Agreement between Main

Street and JDJSL, which contains the arbitration agreement at the heart of the

controversy.[5] JDJSL and Goldner maintain that all of Main Street and Goggin's

claims against them arise out of the Consulting Agreement and are subject to

---

[4] The appeals, filed at four numbers, were briefed and argued together, and we will dispose of them in one writing. All references to the Second Amended Complaint are to the Goldner case.

[5] The arbitrability of Main Street's claims against Luber, the Law Firm, and Dovecote is not at issue herein as those parties have not sought to compel arbitration of their claims. The Investors are not parties to the Consulting Agreement, and thus, their claims against Main Street and Goggin are not subject to its agreement to arbitrate. The joinder claims against Luber and the Law Firm are also not implicated in this dispute regarding arbitrability.

- 8 -

arbitration. It is their position that this includes the original Goldner case, as well as the three joinder complaints filed in the Investors' cases whereby Main Street and Goggin seek liability over against Goldner and JDJSL for statutory violations, contribution, and indemnity, arising from their fraudulent conduct while serving as consultants to Main Street.[6] Thus, this interlocutory appeal only involves some of the claims and some of the parties.[7]

"Our review of a claim that the trial court improperly denied preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the

---

[6] For instance, Main Street alleged that, "To the degree any transfers are determined to be "fraudulent," as claimed by Cherner, Joinder Defendants (and Cherner herself) are responsible for the fraudulent nature of those transfers, and in fact caused additional such transfers to be made from Main Street, to the detriment of Main Street and other investors, for the exclusive and unlawful benefit of Joinder Defendants and Cherner." Cherner Joinder Complaint, 7/6/16, at 2. Main Street pled further that Main Street's insolvency was caused by Goldner, Cherner, JDJSL, and Luber. *Id*. at ¶36. This appeal is limited to the arbitrability of Main Street and Goggin's claims against Goldner and JDJSL only; the other claims involving other parties will remain in the judicial forum for disposition.

[7] We have jurisdiction to review these interlocutory orders because "an order overruling preliminary objections seeking to compel arbitration is immediately appealable as of right pursuant to 42 Pa.C.S. § 7320(a) and Pa.R.A.P. 311(a)(8)." **Petersen v. Kindred Healthcare, Inc.**, 155 A.3d 641, 644 n.1 (Pa.Super. 2017).

petition." ***Davis v. Ctr. Mgmt. Group, LLC***, 192 A.3d 173 (Pa.Super. 2018) (quoting ***Cardinal v. Kindred Healthcare, Inc.***, 155 A.3d 46, 49-50 (Pa.Super. 2017)). "We employ a two-part test to determine whether the trial court should have compelled arbitration: 1) whether a valid agreement to arbitrate exists, and 2) whether the dispute is within the scope of the agreement." ***Washburn v. Northern Health Facilities, Inc.***, 121 A.3d 1008, 1012 (Pa.Super. 2015).

Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the Federal Arbitration Act ("FAA"). ***Gaffer Ins. Co. v. Discover Reinsurance Co.***, 936 A.2d 1109, 1113 (Pa.Super. 2007). However, there must be a valid agreement to arbitrate, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue. As this Court held in ***Pisano v. Extendicare Homes, Inc.***, 77 A.3d 651, 662 (Pa.Super. 2013), "compelling arbitration upon individuals who did not waive their right to a jury trial" infringes upon a constitutional right conferred in Pa. Const. Art. 1, § 6 ("Trial by jury shall be as heretofore, and the right thereof remain inviolate.").

Despite the policy favoring the settlement of disputes by arbitration, "arbitration agreements are to be strictly construed and such agreements

should not be extended by implication." ***Elwyn v. DeLuca***, 48 A.3d 457, 461 (Pa.Super. 2012). Furthermore, a party to an arbitration agreement cannot be compelled to arbitrate claims that fall outside the scope of the agreement. ***Id***. "Whether a dispute is within the scope of an arbitration agreement is a question of law for which our scope of review is plenary. ***Provenzano v. Ohio Valley Gen. Hosp.***, 121 A.3d 1085, 1095 (Pa.Super. 2015).

In determining the scope of an arbitration provision, we look to "the intention of the parties as ascertained in accordance with the rules governing contracts generally." ***Smay v. E.R. Stuebner, Inc.***, 864 A.2d 1266, 1273 (Pa.Super. 2004) (citations omitted). We apply the rules of contractual construction to determine the scope of an agreement, "adopting an interpretation that gives paramount importance to the intent of the parties and ascribes the most reasonable, probable, and natural conduct to the parties." ***Fellerman v. PECO Energy Co.***, 159 A.3d 22, 26-27 (Pa.Super. 2017) (quoting ***Callan v. Oxford Land Dev., Inc.***, 858 A.2d 1229, 1233 (Pa.Super. 2004) (citations and quotation marks omitted)). As with contract interpretation generally, our goal is "to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement." ***Id***.

Moreover, valid arbitration clauses encompassing some of the claims asserted will be enforced even if they result in piecemeal litigation, duplicative proceedings, and inconsistency. ***Taylor v. Extendicare Health Facilities, Inc.***, 147 A.3d 490 (Pa. 2017); ***see also Davis***, ***supra*** at n.7 (citing ***Taylor*** as rejecting the argument that an arbitration clause resulting in the bifurcation of wrongful death and survival claims was void due to the doctrine of impracticability).

Herein, the trial court found that the conversion and fraud claims grounded in tort were not encompassed within the contract for consulting services. Trial Court Opinion, 11/14/17, at 6. It concluded that the outrageous conduct of Goldner, Luber, and others alleged herein was not "contemplated nor embodied in the Consulting Agreement[,]" and that the Agreement "was more likely a means to facilitate the conspirators' fraudulent schemes." ***Id***. Moreover, the court reasoned that, "inefficiency and risk of inconsistent decisions are foreseeable outcomes if [Main Street's] embezzlement conspiracy claims against JDJSL were litigated" in arbitration "while the embezzlement conspiracy claims against Goldner, Luber and

others" proceeded in court. *Id*. at 6-7 (citing ***Thermal C/M Servs., Inc. v. Penn Maid Dairy Prod***., 831 A.2d 1189, 1193 (Pa.Super. 2003)).[8]

In arriving at the foregoing conclusion, the trial court found that Goldner and Goggin, who were not parties to the Consulting Agreement, were not subject to the arbitration agreement. Trial Court Opinion, 11/14/17, at 6. However, Goldner argues that the arbitration clause in the Consulting Agreement is "fully effective and enforceable by and among Main Street, Goggin, JDJSL and Goldner." Appellants' brief at 19. Goldner cites our decision in ***Provenzano***, ***supra*** at 1097, for the proposition that where an "obvious and close nexus" exists between the non-signatories and the contract or the contracting parties, such as "the relationship between a signatory principal and a non-signatory agent[,]" if the principal is bound, the non-signatory agents and employees are bound and can enforce the agreement.

In ***Provenzano***, there was a dispute between a hospital and a physician regarding severance following the hospital's decision not to renew his contract. The hospital filed a complaint in arbitration pursuant to a provision in the arbitration agreement requiring the parties to arbitrate any disputes "regarding the interpretation or application of" the agreement. *Id*. at 1091.

---

[8] The continued vitality of this case is seriously eroded by ***Taylor***, ***supra***.

The physician filed suit in court against the hospital and its officers and directors for breach of contract and violation of the Wage Payment and Collection Law, alleging that the hospital and the individuals were jointly and severally liable on the latter claim, but that the individuals were not signatories to the arbitration agreement. The trial court overruled the hospital's preliminary objections seeking to compel arbitration on the ground that the dispute encompassed more than the hospital entity, and that the physician did not agree to arbitrate his Wage Payment claim.

On appeal, this Court relied upon our earlier decision in *Dodds v. Pulte Home Corp.*, 909 A.2d 348 (Pa.Super. 2006), where we held that the plaintiffs' joinder of defendant parent corporation, who was a non-signatory to the contract, and assertion of claims for fraud and unfair trade practices against the non-signatory, did not defeat the arbitrability of the claims. We held that non-signatories to an arbitration agreement can enforce the agreement when there is an "obvious and close nexus" between the non-signatories and the contract or the contracting parties. We added that such a relationship arises from the relationship between a signatory principal and a non-signatory agent, and if the principal is bound by an arbitration agreement, its agents and employees are likewise bound even as non-signatories. *See Arthur Andersen LLP, et al. v. Carlisle, et al.*, 556 U.S. 624 (2009).

Thus, we concluded in **Provenzano** that the non-signatory physicians were covered by the arbitration agreement entered into by the hospital. **See also Smay**, **supra** (holding non-signatory architect defendant was subject to arbitration clause signed by school district where claim against both stemmed from same incident under construction contract).

Goldner and JDJSL direct our attention to the pleadings wherein Goggin and Main Street averred that Goldner was the agent or employee of JDJSL, the contracting principal. In addition, Goggin was a signatory to the Consulting Agreement as the managing member of Main Street. We find that the trial court erred in concluding that Goggin and Goldner were not bound by their companies' agreements. Since the two men were alleged to be agents of their respective companies, they are bound by the arbitration agreement based on our rationale in **Provenzano** and **Dodds**.

We turn now to the question whether the claims pled fell within the scope of the arbitration provision. The notion that a contractual arbitration provision cannot encompass tort claims has been soundly rejected. **See Dodds**, **supra** (holding claims of fraud and unfair trade practices did not take matters out of the ambit of the arbitration agreement). We recently reaffirmed in **Saltzman v. Thomas Jefferson Univ. Hosp., Inc.**, 166 A.3d 465 (Pa.Super. 2017), that matters arising from a contract may encompass

- 15 -

tort claims where the facts which support the tort action also support a breach of contract action. **Accord Shadduck v. Christopher J. Kaclik, Inc.**, 713 A.2d 635, 638-39 (Pa.Super. 1998) (holding that an agreement to arbitrate any disputes arising from a contract encompasses tort claims if the facts which support the tort action also support a breach of contract action); **see also Warwick Tp. Water and Sewer Authority v. Boucher & James, Inc**., 851 A.2d 953 (Pa.Super. 2004) (requiring arbitration of negligence claims arising out of the contract); **Pittsburgh Logistics Sys., Inc. v. Prof'l Transp. & Logistics, Inc.**, 803 A.2d 776 (Pa.Super. 2002) (holding arbitrable claims for misappropriation of trade secrets and breach of fiduciary duty). "A claim's substance, not its styling," controls whether arbitration or the judicial forum is appropriate. **Callan**, **supra** at 1233.

The arbitration provision at issue provides in pertinent part:

> **Any controversy or claim arising out of or relating to this Agreement, or breach thereof**, may be resolved by mutual agreement; or if not, **shall be settled in accordance with the Arbitration rules of the American Arbitration Association in Philadelphia, Pennsylvania**. Any decision issued therefrom shall be binding upon the parties and shall be enforceable as a judgment in any court of competent jurisdiction. . . .

Consulting Agreement, 5/20/14, at 4 ¶14 (emphasis added).

The "arising out of or relating to" language makes this what is commonly referred to as a broad arbitration agreement. A virtually identical arbitration agreement was at issue in **Saltzman**, **supra**. Plaintiff physician signed an

- 16 -

employment contract, a portion of which was designated "Physician Service Agreement." It provided that if attempts to resolve "any controversy or claim between the parties hereto arising under or related to this Agreement, or any breach thereof" failed, the parties agreed to submit the dispute to binding arbitration. The plaintiff physician was terminated after she reported the hospital for holding out a chiropractor as a licensed doctor of medicine. She asserted a wrongful termination claim and a claim under the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421-1428, and the hospital sought to compel arbitration. The trial court concluded that the agreement to arbitrate was unenforceable, and never reached the issue whether the scope of the agreement encompassed the wrongful termination and whistleblower claims.

On appeal, this Court first determined that the arbitration agreement was valid and enforceable, rejecting the trial court's finding that it was a contract of adhesion and that its enforcement would violate public policy. We then exercised our plenary jurisdiction to examine the legal question whether the claims fell within the scope of the arbitration agreement. In light of the expansive language used, and our precedent compelling the arbitration of tort claims arising from a contractual relationship where the language of the arbitration clause is broad, this Court concluded that the arbitration clause "encompasse[d] all disputes relating to the parties' contractual relationship[,]"

including the tort claims for wrongful termination and under the whistleblower statute. *Id*. at 477. *See*, *e.g.*, *Callan*, *supra* (holding arbitrable a tort claim arising out of real estate transaction); *Warwick*, *supra* (holding negligence claim related to contract and subject to broad arbitration clause).

Herein, the broad arbitration clause embraces "claims arising out of or related to" the Consulting Agreement. That Agreement recites that Main Street is engaging JDJSL as an independent contractor consultant on a non-exclusive basis, "to render such advice, consultation, information, and services to the managers and/or officers of [Main Street] regarding general financial and business matters[.]" *Id*. at 1. Those matters include, but are not limited to, strategic alliances, mergers and acquisitions, corporate planning, business development, structuring and providing alternative sources for accounts receivable and asset financing, due diligence, and periodic reporting of general financial developments. *Id*. JDJSL was not given power to contractually bind Main Street or transact any business in its name. The Consulting Agreement set forth the terms of compensation, reimbursement for expenses, a confidentiality provision, an integration clause, and the arbitration provision. Generally, the Consulting Agreement laid out the terms of the business arrangement between the parties, including their respective duties and compensation.

Main Street's claims for fraudulent misrepresentation, conversion, civil conspiracy, and unjust enrichment herein against Goldner and JDJSL, as well as Luber and others, relate primarily to two schemes. The following particulars are gleaned from the Second Amended Complaint, which we deem true for purposes of preliminary objections. The first scheme involved a pretextual loan Goldner personally requested and obtained from Goggin through Main Street in order to purchase the Malvern Property. Goldner misrepresented to Goggin that he wanted to personally purchase the home, but needed a $150,000 loan to accomplish that. Goggin, on behalf of Main Street, agreed to make the loan directly to Goldner. In reality, Goldner and Luber plotted to use far more of Main Street's money to fund the purchase, and the personal loan was a means of concealing a much larger misappropriation of funds. Unbeknownst to Goggin, Goldner and Luber fraudulently took out a loan in the amount of $700,000 from Par Funding in Main Street's name, the proceeds of which they used to purchase the $1.8 million Malvern Property, which they placed in Dovecote, the entity they created for that purpose. Main Street funds were thereafter used to repay both the principal and interest on the loan, a sum totaling $910,000, over the ensuing six months, from July 16, 2015, through January 29, 2016. Goggin and Main Street alleged that Dovecote and Goldner were unjustly enriched in

the amount of $910,000 by the fraudulent scheme perpetrated by Goldner, Luber, JDJSL, and Dovecote, and sought an order imposing a constructive trust on the Malvern Property.

After a thorough review of the record, it appears that the claims asserted in Counts I through IV involving the Malvern Property are unrelated to the Consulting Agreement and services provided thereunder. The scheme had its genesis in the loan Goldner requested, and Goggin authorized from Main Street, to enable Goldner to make the purchase of the home for his own personal benefit. There was no nexus between the loan and the Consulting Agreement or the contracted-for services. We find that the trial court correctly found that the claims in Counts I through IV, related to the Malvern Property, fell outside the scope of the Consulting Agreement. Consequently, Goggin and Main Street cannot be compelled to arbitrate those claims.

The same cannot be said for the remaining claims. The claims asserted in Counts V (Fraudulent Misrepresentation), VI (Conversion), and VII (Unjust Enrichment) stem from fraudulent misrepresentations made by Goldner to Goggin regarding Main Street's positive cash flow in order to convert and "extract funds from [Goggin and Main Street] under the guise of compliance with the Consulting Agreement." Second Amended Complaint, 8/15/16, at ¶121. Main Street and Goggin, based on their "close, confidential and/or

fiduciary relationship" with Goldner, relied upon those false representations when they dispersed millions of dollars in unearned compensation to JDJSL and Goldner pursuant to the terms of the Consulting Agreement. *Id*. at ¶122.

Count VIII is a claim for breach of fiduciary duty against Goldner. Main Street and Goggin allege that, as a consultant, Goldner effectively ran the day-to-day operations of Main Street, that he had superior knowledge with respect to the factoring business, and that he owed a fiduciary duty consisting of "loyalty, due care, fairness, good faith and full disclosure" to Goggin and Main Street. *Id*. at ¶¶140-41. He breached his duty by placing his own interests above those of Main Street and looting the business.

Counts V, VI, VII, and VIII of the Goldner case involve claims against Goldner and JDJSL that arise out of and are related to the Consulting Agreement. Goldner's misrepresentation of Main Street's financial condition in order to inflate the compensation due him under the Consulting Agreement, to the detriment of Main Street, his embezzlement of funds, fall squarely within the ambit of the Consulting Agreement. At its essence, these are claims that Goldner and JDJSL engaged in fraudulent acts in the performance of their consulting services to increase the amount of compensation payable under the Agreement and transfer funds to himself and his family. Goldner, assisted by

Luber, used "his position of trust and confidence as a consultant of Main Street to embezzle over two and a half million dollars." *Id*. at 1.

The trial court concluded that the duty not to steal is a broad societal one, and thus the duty implicated was one of tort, not a contractual one. According to the trial court, torts involving theft and fraud were not contemplated within the Consulting Agreement, and thus, the agreement to arbitrate was inapplicable. However, the fact that these are tort claims does not render the arbitration agreement inapplicable, where, as here, the alleged financial wrongdoing arises out of the Consulting Agreement. *See Saltzman*, *supra*; *Fellerman*, *supra*; and *Callan*, *supra*. Hence, we conclude that the tort claims as set forth in Counts V through VIII of the Goldner complaint, related to and arising from the services contracted for in the Consulting Agreement, fall within the scope of the arbitration agreement.[9]

Finally, the trial court reasoned that the "inefficiency and risk of inconsistent decisions" that would necessarily result if Main Street's conspiracy claims against JDJSL were litigated in arbitration, while the conspiracy claims

_____

[9] The joinder claims in the Investors' cases, styled as violations of the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S. § 5101 *et seq.*, are based on the same conduct as the fraudulent loan claims in Counts I-IV and the excessive compensation and embezzlement claims asserted in Counts V through VIII of the Goldner complaint.

- 22 -

J-A12006-18
J-A12007-18
J-A12008-18
J-A12009-18

against Goldner, Luber, and others proceeded in court, outweighed any preference for arbitration. That argument was rejected by our Supreme Court in *Taylor*, *supra*. Our High Court held therein that the policy underlying the FAA trumps such concerns. In *Taylor*, wrongful death claims were not subject to an agreement to arbitrate, while survival claims were. Pennsylvania rules mandated that wrongful death and survival actions be tried together. The Supreme Court held that the FAA pre-empted our law and required that the arbitrable survival claims be severed and transferred to arbitration. In arriving at its holding, our High Court relied upon the Supreme Court's decision in *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 26 (2011), for the proposition that:

> When a complaint contains both arbitrable and nonarbitrable claims, the [FAA], 9 U.S.C.S. §§ 1 - 14, requires courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even when the result would be the possibly inefficient maintenance of separate proceedings in different forums. The FAA requires piecemeal resolution when necessary to give effect to an arbitration agreement.

In *Taylor*, our High Court also pointed to *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985), wherein the United States Supreme Court approved of bifurcation to give effect to an arbitration clause, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *See also Moses H. Cone Mem'l Hosp. v. Mercury*

- 23 -

*Constr. Corp.*, 460 U.S. 1, 20 (1983) ("[The FAA] requires piecemeal resolution when necessary to give effect to an arbitration agreement.").

In nursing home arbitration cases, it is commonplace that wrongful death claims are not subject to arbitration agreements while survival claims often are. In addition, such cases may involve the combined negligence of several actors, some of which have agreed to arbitrate and others that have not, resulting in the splitting of survival claims in two forums. Despite the fact that much of the proof is overlapping, our High Court has ordered the bifurcation of claims to give effect to the arbitration agreements in accordance with *Taylor*, even at the risk of duplication of damages, inconsistent verdicts, and inefficiency. ***See e.g. Tuomi v. Extendicare, Inc***., 119 A.3d 1030 (Pa.Super. 2015), *vacated and remanded*, ***Tuomi v. Extendicare, Inc.***, 2016 Pa. LEXIS 2565 (Pa. 2015). Thus, the trial court's concern herein that the adjudication of conspiracy claims in different forums "invites both gross inefficiency and inconsistency[,]" while valid, is of no moment. Giving effect to an arbitration provision outweighs such concerns.

For the foregoing reasons, we affirm the trial court's order overruling JDJSL and Goldner's preliminary objections seeking to compel arbitration as to Counts I through IV of the Goldner complaint, and to the joinder claims in the Investors' cases based on the fraudulent loan. We vacate the order as to

Counts V through VIII of the Goldner complaint, and the claims in the joinder complaints in the Investors' cases based on claims that Goldner misrepresented Main Street's financial condition in order to inflate the compensation paid to himself and JDJSL, and embezzled funds generally by making fraudulent transfers for his own benefit, and remand for further proceedings consistent herewith.

Orders affirmed in part and vacated in part. Cases remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/28/18